Helen Rich **FINDLAY**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-
ENUE**, Respondent.

**Nos. 15, 16, Dockets 28079, 28080.**

United States Court of Appeals
Second Circuit.

Argued Jan. 28, 1964.

Decided June 2, 1964.

Lewis Stanton Bowdish, New York
City, for petitioner.

Robert A. Bernstein, Dept. of Justice,
Washington, D. C. (Louis F. Oberdorfer,
Asst. Atty. Gen., Lee A. Jackson, David

O. Walter, Giora Ben-Horin, Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before LUMBARD, Chief Judge, WATERMAN and MARSHALL, Circuit Judges.

LUMBARD, Chief Judge:

The taxpayer appeals from the assessment of federal income tax deficiencies for the years 1953 through 1956 in the respective amounts of $6,744.05, $6,590.52, $22,777.20, and $8,384. We affirm the decisions of the Tax Court, 39 T.C. 580 (1962), except to the extent that the sum paid by the ancillary administrator in satisfaction of the British estate tax, $30,185.95, was held to be includible in the taxpayer's gross income for 1955. Determination of the numerous issues raised requires recital of the circumstances under which the taxpayer received a testamentary bequest, the nature and amount of which are here disputed.

The taxpayer's deceased husband, J. W. Findlay, solicited insurance for Willis, Faber & Dumas, Ltd., insurance brokers and underwriters of London, England. He was also a member of a partnership in New York City engaged in the insurance business. On March 27, 1936 he executed an agreement with Willis, Faber & Dumas, Ltd. providing for the payment of commissions after his death for a specified period. In his will, dated February 17, 1949, the decedent bequeathed one-half of the commission payments to the petitioner from whom he had been divorced in 1948. J. W. Findlay died in 1951, a citizen of the United States and a resident of New York.

An agreement dated May 6, 1952 was executed by the taxpayer and Lois Elliman Findlay, the decedent's widow, and the Schroder Trust Company, as executor of the will of J. W. Findlay, under which the Schroder Trust Company purported to assign the testator's rights to commissions payable by Willis, Faber & Dumas, Ltd., to taxpayer and Lois Elliman Findlay. On May 29, 1952 the taxpayer, Lois Elliman Findlay, Willis, Faber & Dumas, Ltd., and the Schroder Trust Company entered into a second contract under which the taxpayer and Lois Elliman Findlay agreed to accept $150,000 each in settlement of the obligation of Willis, Faber & Dumas, Ltd., created by the agreement of March 27, 1936. A subsequent agreement dated November 11, 1953, executed by the same parties, modified the details of payment of the May 29, 1952 contract so that the sums payable would be as follows:

"(a) $50,000 each to Lois Elliman Wright and Helen Rich Findlay upon the execution and delivery of the agreement itself;

"(b) $25,000 each to Lois Elliman Wright and Helen Rich Findlay on January 10, 1954; and

"(c) $25,000 each to Lois Elliman Wright and Helen Rich Findlay on December 10, 1954; and

"(d) $50,000 each to Lois Elliman Wright and Helen Rich Findlay on January 10, 1955; provided, however, that no payments need be made under clauses (c) and (d) above unless and until evidence satisfactory to [Willis, Faber & Dumas, Ltd.] has been furnished to it by Schroder Executor & Trustee Company, Ltd., as Ancillary Administrator with the Will annexed of the Estate of J. Wilfred Findlay, that all British death duty on said estate has been paid in full; and provided further that in case, prior to December 10, 1954, said Ancillary Administrator shall certify to [Willis, Faber & Dumas, Ltd.] that British estate assets available to the Ancillary Administrator * * are insufficient to pay all British death duty on said estate, together with the amount required to pay any deficiency therein, then and in such event [Willis, Faber & Dumas, Ltd.] shall forthwith pay to said Ancillary Administrator the amount so required to pay such deficiency (but not in excess of $150,000), and thereupon the obligations of [Willis, Faber & Dumas, Ltd.] to make payments un-

der clauses (c) and (d) above to Lois Elliman Wright and Helen Rich Findlay shall be reduced by the amount so paid to the Ancillary Administrator. * * * "

Taxpayer received payments from Willis, Faber & Dumas, Ltd. of $50,000 in each of the years 1953 and 1954 and $19,815.05 in 1955 pursuant to the agreement of November 11, 1953. Finally, in 1956 the Board of Directors of the British insurance firm voted to make an additional payment of $16,425 to the petitioner.

The taxpayer claims (1) that the payments received in 1953, 1954 and 1955 were not income in respect of a decedent and, therefore, should not be taxed as ordinary income; (2) that if these payments are to be treated as income in respect of a decedent the taxpayer should be able to deduct an amount equal to the full United States estate tax attributable to the commissions; (3) that the $30,185.95 withheld in 1955 by Willis, Faber & Dumas and used to pay a portion of the British estate duty was, in any event, not received by her and not properly includible in her gross income for 1955; and (4) that the $16,425 received from Willis, Faber & Dumas was a gift exempt from tax under § 102(a) of the 1954 Internal Revenue Code.

█ First we turn to the taxpayer's contention that the payments received from Willis, Faber & Dumas in 1953, 1954 and 1955 were not taxable to her as income in respect of a decedent, but rather they are excludable testamentary bequests. Under § 126 of the Internal Revenue Code of 1939, and the comparable § 691 of the Internal Revenue Code of 1954, it is clear that these sums received are income in respect of a decedent. Section 691 provides that the "amount of all items of gross income in respect of a decedent which are not properly includible in respect of the taxable period in which falls the date of his death or a prior period * * * shall be included in the gross income, for the taxable year when received, of: * * * (C) the person who acquires from the decedent the

right to receive the amount by bequest, devise, or inheritance, if the amount is received after a distribution by the decedent's estate of such right."

The sums paid represented renewal commissions on insurance contracts originally written by Findlay and personally serviced by him during his lifetime and were thus clearly attributable to Findlay's business activities prior to his death. The commissions here involved were not payable until after Findlay's death and therefore were not properly included in his income for his last taxable period. Similar commissions received by Findlay during his life from his insurance business were taxable as ordinary income. The commissions paid to petitioner after decedent's death retain their nature as ordinary income and consequently, are taxable as ordinary income. Latendresse v. Commissioner of Internal Revenue, 243 F.2d 577 (7 Cir.), cert. denied, 355 U.S. 830, 78 S.Ct. 43, 2 L.Ed.2d 43 (1957).

█ The taxpayer asserts that Findlay's executor, and not she, is liable for the tax on the commissions since, under the agreement of May 6, 1952, the right to the commission income was transferred by Findlay's executor to the taxpayer. In fact, this agreement states that "the parties (including the petitioner and the executor) are agreed that said bequest constitutes a specific legacy of testator's rights under said contract and of the benefits therein provided." Therefore it is clear that the taxpayer received the commission income directly as a result of the decedent's will and not because of any selection made by the executor to satisfy some general legacy. Section 691(c) of the 1954 Code, as well as § 126 of the 1939 Code applies and these commissions constitute ordinary income in the hands of the petitioner.

█ Nor was the taxpayer entitled to the total deduction provided by § 691(c). With regard to a taxpayer who includes in his own reported income for a taxable year those sums which were received and which were income in respect of a dece-

dent, § 691(c) only allows a deduction from his gross income in the amount of the estate tax attributable to the income in respect of a decedent on which he has to pay an income tax. The taxpayer here points out that the decedent's widow received a portion of the income in respect of a decedent and that the maximum § 691(c) deduction was unavailable to the extent that it was included in the widow's marital deduction. She argues that she is entitled to use the full deduction because her share of the estate's income in respect of a decedent in fact bore the burden of the only estate tax imposed on the income in respect of a decedent. However, § 691(c) (1) (A), as enacted, clearly does not reduce the value for estate tax purposes to the extent income in respect of a decedent is included in a marital deduction. Indeed, legislation to change this result has been proposed, but it has failed of enactment. Section 19, H.R. 3041 (January 21, 1959), 86th Cong., 1st Sess.

■ The petitioner further claims that in the third year of payment, 1955, she should be taxed only on the amount of $19,815.05 actually received and not on the additional sum of $30,184.95 which represents the British estate duty attributable to her share of the commission payments from Willis, Faber & Dumas and which were paid by Willis, Faber & Dumas to the executor of the decedent's estate as provided for in the November 11, 1953 agreement. English law places the liability for the estate duty on the executor, not the distributee. Under the agreement of May 29, 1952, the petitioner agreed to accept $150,000 in full and final settlement of the obligation of Willis, Faber & Dumas to make the commission payments called for under the 1936 agreement between the decedent and Willis, Faber & Dumas. By the subsequent contract of November 11, 1953, the taxpayer agreed to the reduction of this figure to the extent necessary to pay British estate duty attributable to her share of the commissions, if the British assets available to the ancillary administrator were insufficient for this purpose.

Apparently the May 29, 1952 agreement was made in the belief that the commissions earned by J. W. Findlay and held by Willis, Faber & Dumas were not subject to the British estate duty. Sometime after this agreement was concluded it became clear that there would indeed be a British tax on this sum and that therefore the net commissions available for distribution would be less than provided for in the May 29 agreement. It was under these circumstances that the contracting parties agreed to abandon the May 29 agreement and renegotiate a new agreement, dated November 11, 1953. The sums remitted to the taxpayer pursuant to this later agreement totalled $119,815.05.

The $30,184.95 withheld by Willis, Faber & Dumas was never received by the taxpayer; nor can it fairly be said that it was constructively received by this cash-basis taxpayer. Additionally, it does not represent the discharge of a tax or other obligation owed by the taxpayer. Under the agreement of November 1953, the taxpayer had no right to receive the commissions free of British estate duty. Income is not constructively received if the taxpayer's control is subject to substantial restriction as it is here. See Federal Tax Regulations § 1.451–2. Furthermore, the payment of the British estate duty satisfied an obligation of the ancillary administrator, not any obligation of Mrs. Findlay. We therefore reverse the Tax Court's inclusion of the $30,185.95 in the taxpayer's gross income for 1955.

■ Finally, in 1956, the petitioner received $16,425 from Willis, Faber & Dumas. The petitioner asserts that this amount is a gift and is exempt from the tax under § 102(a) of the 1954 Code. However, the company had little intention to make a gift. Indeed, the settlement made in 1951 with the Findlay estate took into account the fact that further payments would almost certainly have to be made to J. W. Findlay's dependents. As shown by the minutes of the company's board of directors, this payment was considered to be necessary

**624**

both in relation to the continuance of the business connections developed by the late J. W. Findlay and the preservation of the company's reputation in the United States. The $16,425 paid to the petitioner was deducted by Willis, Faber & Dumas for British tax purposes. The circumstances clearly indicate that it was not a payment flowing from a "detached and disinterested generosity" but rather it arose from "the constraining force of a moral duty," and as such constitutes taxable income to the petitioner under § 61(a) of the Internal Revenue Code of 1954. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

The decisions of the Tax Court are thus affirmed in part and reversed to the extent that the sums withheld for payment of the British estate tax were incorrectly included in taxpayer's gross income.