Estate of Sydney J. Carter, Deceased (a/k/a Sydney J. Canter), Dorothy T. Carter, Executrix, and Mrs. Dorothy T. Carter, Surviving Wife v. Commissioner.
Estate of Carter v. Commissioner
Docket No. 416-68.
United States Tax Court
T.C. Memo 1970-305; 1970 Tax Ct. Memo LEXIS 56; 29 T.C.M. (CCH) 1407; T.C.M. (RIA) 70305; November 2, 1970, Filed Michael S. Feinman, for the petitioners. Powell W. Holly, Jr., for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: The respondent determined a deficiency in the income tax of petitioner Mrs. Dorothy T. Carter for the taxable year 1960 in the amount of $30,729.85, plus interest as provided by law. *57 The only issue presented for decision is whether or not payments made by an employer to the widow of a deceased employee are to be treated as a gift within the meaning of section 102 [1] or whether such payments are to be treated as compensation includable in gross income under section 61. Findings of Fact The evidence consists of a stipulation of facts with exhibits attached and oral testimony and exhibits submitted at trial. The facts as stipulated are incorporated herein by this reference. Petitioners herein are Dorothy T. Carter as Executrix of the Estate of Sydney J. Carter (also known as Sydney J. Canter), deceased, and Mrs. Dorothy T. Carter, surviving wife of Sydney Carter, whose legal residence at the time of the filing of the petition herein was in Brooklyn, New York. (These parties are hereinafter sometimes referred to as "petitioners.") Sydney Carter's estate and Dorothy T. Carter (hereinafter sometimes referred to as "Mrs. Carter") filed a joint Federal income tax return for the taxable year 1960 with the district director of internal revenue, Brooklyn, *58 New York. Sydney Carter (hereinafter referred to as "decedent") died on March 1, 1960. At that time, he had been employed by Salomon Bros. & Hutzler (hereinafter sometimes referred to as "Salomon Bros."), a partnership engaged in the brokerage business, for approximately 38 years. Decedent was never a partner in the Salomon Bros. firm. As a young man, he began working for the firm in a training capacity and later was a bond trader. After that he was sent to reorganize the Cleveland office of the firm and covered the 1408 Pittsburgh territory. In the late 1940's one of the partners of Salomon Bros. conceived the idea of forming an institutional contract department to serve as a liaison between the traders of New York banks and the traders of Salomon Bros. Decedent was given this assignment, and this was the position he occupied at his death. Salomon Bros. is managed by an administrative committee (hereinafter referred to as the "committee"). The committee does not make decisions as to the compensation of employees of Salomon Bros. In 1956 the management of Salomon Bros. made decedent a contract employee of the firm and thereafter he was issued a yearly employment contract. *59 Decedent was employed by Salomon Bros. under such an employment contract at the time of his death. This contract provided for an annual salary of $15,000. It further provided for payment to the decedent of.55 percent of Salomon Bros.' net profits, if any, for the period encompassed by the employment contract if decedent was still an employee of Salomon Bros. at the expiration date of the contract. Compensation for decedent's services rendered up to the time of his death has been paid in full by Salomon Bros. In addition, decedent, as an employee of Salomon Bros., had participated in the firm's profit-sharing plan. After decedent's death, Salomon Bros. paid Mrs. Carter, as the named beneficiary of a deceased participant, by a check enclosed in a letter dated September 29, 1960, the sum of $52,337.68, the amount that had accumulated as her husband's share under the plan during his entire period of employment. In the letter mailed with the check, Salomon Bros. instructed Mrs. Carter that this amount (less the first $5,000) was taxable to her. The amount of the check less $5,000 was reported as long-term capital gain on the joint Federal income tax return for 1960 filed by Mrs. Carter. *60 Subsequent to decedent's death, Salomon Bros. paid directly to Mrs. Carter, individually, amounts aggregating $60,130.84. These payments were made pursuant to a decision of the committee to make payments to Mrs. Carter for the amounts that decedent would have earned as salary and the percentage of the firm's profits to which he would have been entitled to under his employment contract had he survived to the end of the partnership's fiscal year. At the time the decision was made, the partners on the committee did not know what decedent's share of the profits would be since the decision was made after decedent's death and not at the end of Salomon Bros.' fiscal year. The amount of $60,130.84 paid to Mrs. Carter consisted of 15 checks drawn by Salomon Bros. payable to Mrs. Carter, each in the amount of $576.92 and totaling $8,653.80, and 2 checks in the amounts of $21,448.76 and $30,028.28, respectively, drawn by Salomon Bros. to the order of Mrs. Carter. The 15 checks totaling $8,653.80 represented amounts which decedent would have earned as salary had he survived to the end of the firm's fiscal year. The remaining sum of $51,477.04 represented the amount the decedent would have *61 received under the "percentage of profits" or bonus clause in his employment contract. Salomon Bros. withheld taxes and filed a W-2 form for amounts paid to decedent for the period of his employment in 1960 prior to his death. Salomon Bros. did not withhold any taxes from the payments totaling $60,130.84 and did not file any W-2 form for this sum. Salomon Bros. furnished Mrs. Carter with an information return (Form 1099 [2]) for the portion of the payments made to her in the taxable year 1960 representing the amount of the bonus decedent would have received had he survived to the end of the firm's fiscal year ($51,477.04 of $60,130.84). This amount was designated by the firm on the Form 1099 as "Salaries, Fees, Commissions, or Other Compensation." The payments to Mrs. Carter were deducted by Salomon Bros. in the partnership tax return for its 1960 fiscal year. The internal revenue service has disallowed any deduction to Salomon Bros. for these payments. Salomon Bros. has filed a refund suit in the United States Court of Claims claiming that the position of the commissioner of internal revenue in this regard is erroneous. *62 During his 38 years of employment with Salomon Bros., Sydney Carter had been ill and had to be hospitalized more than twenty different times. This included seven major operations. On these occasions, the partners of Salomon Bros. offered their financial assistance to Mrs. Carter. 1409 However, decedent and Mrs. Carter never accepted such assistance. The joint Federal income tax return of the Estate of Sydney J. Carter and Dorothy T. Carter for the taxable year 1960 indicated receipt of the payments made by Salomon Bros. which represented the amounts decedent would have received in salary and bonus had he survived to the end of the firm's fiscal year. These payments were not included in gross income. Mrs. Carter knew many of the partners of Salomon Bros. on a personal basis. She had worked as a secretary for the manager of the Cleveland office from about November 1929 to December 1932 and had met a number of the partners who had occasion to visit the Cleveland office. After she had married decedent, she met many of the partners through her husband. Almost all of the partners attended funeral services for decedent. After decedent's death, her relationship with the firm did *63 not end. The partners suggested that her son work for the firm, which he did for a period of time. At the time the post-mortem payments were made to Mrs. Carter, Salomon Bros. had no plan or policy of making such payments to widows of deceased employees. Furthermore, at the time the payments were made to Mrs. Carter, the firm did not adopt such a policy. Mrs. Carter was not an employee of Salomon Bros. and performed no services for the firm in connection with the payments. Mr. William P. Salomon, managing partner of Salomon Bros. at the time of decedent's death, was called upon to testify. He stated that he had very affectionate feelings toward the decedent. He held decedent in high personal regard, considered him a loyal employee, and respected him. Mr. Salomon knew Mrs. Carter and felt sympathy for her at the loss of her husband. The foregoing factors and recognition of decedent's past service to the firm entered into the decision of the committee to make the payments to Mrs. Carter. Mr. Salomon indicated that it was doubtful whether the decision to make the payments would have been made if decedent had not left a surviving widow and son who were known by the members of the *64 committee. The decision by the committee to make the payments to Mrs. Carter was not embodied in a formal resolution stating that the payments constituted salary continuation. Salomon Bros. did not send Mrs. Carter a letter of instruction stating that the payments constituted taxable income as they did with respect to the amount paid for decedent's profit-sharing plan participation. Sometime at the end of 1960 or the very beginning of 1961, when Mrs. Carter's tax return for 1960 was being prepared, a question arose as to the nature of the payments made to Mrs. Carter by Salomon Bros. Consequently, a meeting was held at the office of Salomon Bros., attended by Mrs. Carter, a Mr. Raskin and a Mr. Hirsch of Nathan Berkman and Co., the firm which had prepared decedent's and Mrs. Carter's tax returns for many years, and Mr. Gartner, a partner in Salomon Bros. Mr. Gartner was not a member of the committee at the time it decided to make the payments to Mrs. Carter. At the meeting held in the office of Salomon Bros., Mr. Gartner stated that it was the firm's intention that the payments to Mrs. Carter were to be gifts to her. He also stated that the firm would not deduct the payments *65 as wages because this was an important element. Subsequent to the meeting, Salomon Bros. mailed a letter, dated February 1, 1961, to Nathan Berkman and Co. The letter stated: In connection with the preparation of Dorothy T. Canter's Federal income tax return for 1960, you have asked us to furnish you with the basis upon which we made two payments of $21,448.76 and $30,028.28 to her. Mrs. Canter's husband had been an employee of this firm for many years. He died on March 1, 1960. After a review of his employment contract, we concluded that there was no obligation to make any post-mortem payments to Mr. Canter's estate or to his widow. Mr. Canter had worked for us for many years and we held him in the highest personal regard. Accordingly, the partners determined to give some tangible expression to that feeling by making the above payments in his honor to his widow. This firm does not have any established policy or plan for making payments to the widows of contract employees such as Mr. Canter. As a matter of fact, Mr. Canter's death presented us for the first time with this situation. The postscript of this letter provided: We have filed form 1099 showing the above figures *66 and sent copy to Mrs. Canter. 1410 Opinion Petitioners argue that the amount of $60,134.84 received by Mrs. Carter from Salomon Bros. should be treated as a gift under section 102(a). They contend that the dominant motive for the payments by Salomon Bros. was to make a gift to Mrs. Carter. Respondent, on the other hand, argues that the payments made by Salomon Bros. were intended to be compensation and are includable in gross income under section 61(a). Whether a payment of this type is an excludable gift or taxable income is a factual question to be resolved on the basis of all the surrounding facts and circumstances. Commissioner v. Duberstein, 363 U.S. 278 (1960). The primary consideration is the intention of the transferor in making the payment. Commissioner v. Duberstein, supra; Tomlinson v. Hine, 329 F. 2d 462 (C.A. 5, 1964); Gaugler v. United States, 312 F. 2d 681 (C.A. 2, 1963); and Margaret H. D. Penick, 37 T.C. 999 (1962). Certain factors have militated against a determination that gifts were intended. Those factors are the existence of a plan or past practice on the part of the transferor of *67 making payments to widows of employees, Cronheim's Estate v. Commissioner, 323 F. 2d 706 (C.A. 8, 1963), affirming a Memorandum Opinion of this Court; Simpson v. United States 261 F. 2d 497 (C.A. 7, 1958), certiorari denied 359 U.S. 944 (1959); the failure of the transferor to consider the needs of the widow as the prerequisite for or the measure of the payment, Cronheim's Estate v. Commissioner, supra; and the treatment of the payment as compensation, including the withholding of income tax by the transferor, Gaugler v. United States, supra; Margaret H. D. Penick, supra. On the other hand, as a basis for determining that certain payments constituted gifts, courts have adverted to the fact that payments were made directly to the widow rather than to the estate; that full compensation had been paid for the services rendered by the husband; that the widow performed no services for the transferor; and that the transferor derived no benefit from the payment. Florence S. Luntz, 29 T.C. 647 (1958); Estate of Arthur W. Hellstrom, 24 T.C. 916(1955). The determination of the transferor's *68 primary motive does not rest upon any single factor but is a conclusion to be reached after a consideration of all the relevant factors. In determining that motive, it must be stressed that the burden of proof is upon the petitioners to show that the transferor's primary motive in making the payments was donative in nature, and that to the extent the record is incomplete, this Court is not warranted in indulging in conjectures in favor of the petitioners to compensate for the deficiencies. Max Kralstein, 38 T.C. 810, at 819 (1962); Margaret H. D. Penick, supra, at 1005; Estate of Mervin G. Pierpont, 35 T.C. 65, at 68 (1960), vacated and remanded with directions on other grounds. Payner v. Commissioner, 301 F. 2d 287 (C.A. 4, 1962). Upon a careful consideration of the record as a whole, we conclude that petitioners have failed to sustain their burden of proving that the primary motive of Salomon Bros. in making the payments to the widow of decedent was donative. The evidence in this case is insufficient to overcome the presumption of correctness which attaches to the respondent's determination of a deficiency. The absence of *69 a legal obligation upon the firm to make the payments does not in and of itself establish that the payments were gifts. Commissioner v. Duberstein, supra; Old Colony Tr. Co. v. Commissioner, 279 U.S. 716 (1929). Subsequent to the authorization of the payment, Salomon Bros. claimed a deduction on its Federal income tax return for the amount paid to Mrs. Carter. This factor, while not conclusive, negates donative intent. Simpson v. United States, supra; Helen Rich Findlay, 39 T.C. 580 (1962), reversed on another issue 332 F. 2d 620 (C.A. 2, 1964). Such action also indicates that the payment may have been motivated by the incentive of an anticipated benefit of an economic nature. Petitioner has not shown that the payments were made to her directly in response to her financial condition. There is no specific evidence which persuasively indicates that the firm made any inquiry into her financial circumstances, and this failure to consider Mrs. Carter's financial status is a very relevant factor in indicating that the motive of the transferor was not to make 1411 a gift to petitioner. Fritzel v. United States, 339 F. 2d 995 *70 (C.A. 7, 1964); Cronheim's Estate v. Commissioner, supra; Roy I. Martin, 36 T.C. 556 (1961), affd. 305 F. 2d 290 (C.A. 3, 1962), certiorari denied 371 U.S. 904 (1962); Margaret H. D. Penick, supra. Salomon Bros. did not withhold income or social security taxes from the payments made to Mrs. Carter. While this fact may be indicative of an intention on the part of the firm to make a gift to Mrs. Carter, it is by itself of limited value in establishing such an intention because death benefit payments are not wages for purposes of the withholding and social security laws. Rev. Rul. 59-64, 1959-1 C.B. 31. In the preparation of Mrs. Carter's tax return for 1960, a question arose as to the nature of the payments made to her by Salomon Bros. As a result, a meeting was held at the office of Salomon Bros. attended by Mrs. Carter, representatives of the accounting firm which was preparing Mrs. Carter's 1960 tax return, and a partner in Salomon Bros. At the meeting, the partner stated that it was the firm's intention that the payments to Mrs. Carter were to be gifts. The partner also stated that the firm would *71 not deduct the payments as a wage deduction. Subsequent to the meeting, a letter was drafted and sent to the accounting firm indicating that the partners of the firm held decedent in the highest personal regard. While the statement of the partner at the meeting and the letter drafted subsequent to the meeting warrant our consideration, we consider these factors to be of only slight probative value in establishing the intent of the firm at the time the decision to make the payments to Mrs. Carter was reached by the committee. The statements of the partner were made and the letter was written after the decision to make the payments had been made and implemented and at a time when the income tax consequences of the payments were being considered by Mrs. Carter (and her accountants) who had a strong interest in having the payments classified as a gift. In these circumstances we cannot attach more than a slight weight to the statements of the partner and the letter as indicative of the firm's intention to make a gift. The managing partner of Salomon Bros., William P. Salomon, stated that it was the desire of the committee to continue the salary of the decedent and the share of the firm's *72 profits which the decedent would have received under his employment contract had he survived to the end of the firm's fiscal year. On this basis, it is obvious that the firm did not intend to be more generous with the widow than it would have been with decedent had he lived, and there is nothing in the record which would be supportive of an opposite conclusion. The firm must have considered the tax effect of the payments as a measure of both the cost to the firm and the benefit to decedent's widow. William R. Salomon also indicated that he held decedent in high personal regard, considered him a loyal employee, and respected him. He further indicated that he felt sympathy for Mrs. Carter and that if decedent had not left a widow and a son whom the partners had known, it is doubtful if the payments would have been made. He also indicated that the decedent's past services were "without question" a factor in arriving at the decision to make the payments. The firm did not send Mrs. Carter a letter of instruction stating that the payments constituted taxable income as they did with respect to the amount paid for decedent's profit-sharing plan participation. However, the firm did file *73 an information return (Form 1099) and furnished Mrs. Carter with a copy. The amount of $51,477.04, the portion of the payments made to her in the taxable year 1960 representing the amount of the bonus decedent would have received as his percentage of profits under his employment contract had he survived to the end of the firm's fiscal year, was designated on the Form 1099 as "Salaries, Fees, Commissions, or Other Compensation." The firm was required to file this information return pursuant to section 6041 and the regulations thereunder. Section 6041 requires all persons engaged in a trade or business to file such returns for payments of any amount over $600 which constitute salaries, wages, commissions, fees, and other forms of compensation for services, or which are payments representing interest, rents, royalties, pensions, annuities, profits, or other income. The manner in which the payments are characterized by the parties is not determinative of their character. Commission v. Duberstein, supra. Rather the characterization of the payments is a factor to be considered with all others in determining the 1412 dominent intent of the transferor. While expressions of sorrow *74 and high regard mitigate language which characterizes payments as compensation, it is not inconsistent to express sorrow and at the same time to pay additional compensation. In turn, the characterization of the payment as a salary continuation is not sufficient to convert a voluntary gratuity into compensation for services. If the burden of proof in this case had been upon the respondent, a different result would be required. However, the burden is upon the petitioners, and in view of the conflicting evidence present in this case, we must hold that petitioners have failed to sustain their burden of proving that the primary intention of Salomon Bros. in making the payments was donative in nature. Decision will be entered for the respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Form 1099, U.S. Information Return for Calendar Year.↩