WILLIAM K. JORDAN and BETTY JORDAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Jordan v. Commissioner
Docket No. 33262-84.
United States Tax Court
T.C. Memo 1986-124; 1986 Tax Ct. Memo LEXIS 485; 51 T.C.M. (CCH) 724; T.C.M. (RIA) 86124; March 26, 1986. Brice A. Tondre, for the petitioners. Gary R. Alonzo, for the respondent. GOFFE
MEMORANDUM OPINION GOFFE, Judge: This case is before us on petitioners' motion for summary judgment. The Commissioner determined deficiencies in petitioners' income tax liabilities for the taxable years 1976, 1977, and 1978 as follows: Taxable
Additions to Tax
Year
Deficiency
Sec. 6651(a)(1) [1]
Sec. 6653(a)(1)
1976
$15,308.79
$2,005.54
$765.44
1977
9,000.63
2,149.48
533.93
1978
24,555.28
6,138.82
1,289.16
*486 In their petition in this case, petitioners alleged that the deficiencies determined by the Commissioner were erroneous because the applicable period of limitations had expired prior to the issuance of the statutory notice of deficiency. Subsequently we granted petitioners' motion to sever the limitations issue for separate trial. As a result petitioners' present motion pertains only to the limitations issue and our ruling will be limited to that extent. A hearing on petitioners' motion was held in Houston, Texas. At that time, the parties submitted a stipulation of facts. We have accepted the stipulated facts and incorporate them in our opinion. Petitioners filed joint Federal income tax returns for the taxable years 1976, 1977, and 1978 with the Internal Revenue Service Center in Austin, Texas, on June 27, 1978, August 31, 1979, and August 30, 1979, respectively. In August 1979, petitioners were contacted for the first time by a revenue agent of the Examination Division of the Internal Revenue Service (I.R.S.) regarding an audit of their return for 1976. Subsequent to this initial contact, the audit of petitioners' return was reassigned to Revenue Agent Oscar Cantu (Agent *487 Cantu) in November 1979. In early January 1980, Agent Cantu met with Mrs. Jordan concerning the audit of petitioners' 1976 return. Later, Agent Cantu expanded his audit to include petitioners' returns for the taxable years 1977 and 1978. In the course of his continuing audit of their returns, Agent Cantu requested that petitioners execute of Form 872, Consent Fixing Period of Limitation Upon Assessment of Tax, thereby consenting to allow the Commissioner additional time to assess a deficiency of income tax for the taxable year 1976. On February 23, 1981, petitioners delivered a signed Form 872 to respondent consenting to an assessment of any deficiencies, for the taxable year 1976 only, until June 27, 1982. Shortly thereafter, respondent signed the Form 872 executed by petitioners. On April 1, 1981, petitioners for the first time signed a power of attorney indicating that they were represented by a certified public accountant concerning the audit of their returns for the taxable years 1976, 1977, and 1978. In November 1981, Agent Cantu referred petitioners' case to the Criminal Investigation Division (C.I.D.) of the I.R.S. Special Agent Ronnie B. Washington (Special Agent *488 Washington) was assigned to perform an investigation to determine if criminal tax charges should be brought against petitioners for the taxable years in issue. In accordance with I.R.S. policy the civil examination of petitioners' returns came to a virtual standstill during the pendency of the criminal investigation. However, on February 17, 1982, Agent Cantu mailed to petitioners a letter and copies of Form 872-A, Special Consent to Extend the Time to Assess Tax. The letter requested that petitioners execute the Forms 872-A, which would extend the time during which the Commissioner could assess a deficiency for the taxable years 1976, 1977, and 1978 until such time as the consent was terminated by any of certain specified events. Sometime subsequent to the receipt of the February 17, 1982, letter from Agent Cantu, petitioners signed, but did not date, Forms 872-A covering each year in issue. However, petitioners did not return the Forms 872-A to the I.R.S. as the letter from Agent Cantu requested. On the evening of May 6, 1982, Special Agent Washington, accompanied by another special agent, conducted an initial interview with Mrs. Jordan at petitioners' residence. Mr. Jordan *489 was out of town at this time and was, therefore, unable to be present. During the interview the special agents informed Mrs. Jordan of her constitutional rights. At the conclusion of the interview with the special agents, Mrs. Jordan delivered over to them the Forms 872-A for the taxable years 1976, 1977, and 1978, that she and Mr. Jordan had previously signed. The consents were left undated. Respondent signed the Forms 872-A received from Mrs. Jordan on May 13, 1982. No copies of the executed consents were returned to petitioners. On May 20, 1982, petitioners signed a power of attorney appointing Brice Tondre and Andrew W. Miller, attorneys, as their representatives regarding the taxable years in issue. On July 7, 1982, Andrew W. Miller telephoned Agent Cantu on behalf of petitioners. Agent Cantu informed petitioners' counsel that all of the books and records obtained in the course of the civil examination were then in the custody of Special Agent Washington. Agent Cantu also informed counsel that Special Agent Washington retained possession of the consents received during his interview with Mrs. Jordan on May 6, 1982. On the same day counsel wrote a letter to Special Agent *490 Washington stating, in part: Mr. Cantu further informed me that you are in possession of Forms 872, Consent to Extend the Time to Assess [T]ax, which were executed by Mr. and Mrs. Jordan. You are hereby notified that we consider those forms to be null and void and we demand the immediate return of said forms. The criminal investigation was subsequently terminated and the case referred back to the Examination Division. On June 27, 1984, the Commissioner issued a statutory notice of deficiency to petitioners for the taxable years in issue. Under Rule 121 a party may move for summary judgment upon all or any part of the legal issues in controversy so long as there are no genuine issues of material fact. Rule 121(b). The burden of proving that there is no genuine issue of material fact is on the moving party. Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Espinoza v. Commissioner,78 T.C. 412, 416 (1982). The essence of petitioners' arguments regarding the period of limitations in support of this motion may be set forth as follows: 1. The letter from petitioners' counsel to Special Agent Washington was sufficient to terminate the consents *491 given in the Forms 872-A signed by petitioners. 2. The solicitation of the consents by Agent Cantu during the pendency of the criminal investigation was improper so that the consents were void at the time they were given. 3. The consents were obtained during the interview with the special agents through duress and are, therefore, void. Section 6501(a) provides the general rule that income tax shall be assessed within 3 years after the return was filed. However, section 6501(c)(4) provides that the period of limitations will not expire if the taxpayer and the Commissioner timely agree in writing to extend the time for assessement. The Commissioner has provided forms for this purpose, which include Forms 872 and 872-A. Petitioners and respondent executed a facially valid Form 872 for the taxable year 1976. A Form 872 executed by all parties constitutes an agreement to allow the Commissioner to assess a deficiency of tax against taxpayers beyond the normal expiration of the period of limitations until the time decided upon by the parties and stated on the form. Prior to the time the original consent terminated by its own terms, petitioners signed and delivered to respondent *492 Forms 872-A extending the time for assessment indefinitely not only for the taxable year 1976, but also the taxable years 1977 and 1978. Each type of consent represents basically a unilateral waiver of a defense by a taxpayer and does not constitute a contract. Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983). Contract principles are, however, helpful and appropriate in analyzing the validity of these consents. 80 T.C. at 1042. The consent granted on Form 872-A may be terminated by either party by notifying the other party, in writing, of the intent to terminate or by the issuance by the Commissioner of a statutory notice of deficiency. Prior to 1979 no particular form or letter existed for the purpose of terminating the effectiveness of an executed Form 872-A. In that year the I.R.S. announced that henceforth Form 872-A consents could be terminated, other than by the issuance of a statutory notice of deficiency by the Commissioner, only by signing and mailing new Form 872-T in accordance with instructions contained on that form. Rev. Proc. 79-22, 1979-1 C.B. 563, superseding Rev. Proc. 71-11, 1971-1 C.B. 678. This *493 Court recently considered a challenge similar to petitioners' in Grunwald v. Commissioner, 86 T.C.     (Jan. 28, 1986). In that case we considered whether a letter from an I.R.S. appeals officer to counsel for the taxpayers was sufficient to terminate a Form 872-A consent. We concluded that the parties were bound by the explicit provisions for termination found in the Form 872-A signed by the taxpayers and the Commissioner. 86 T.C.     at p. 7 of Slip Opinion. Because the only methods available to the Commissioner to terminate the consent under the terms of Form 872-A were the issuance of a statutory notice of deficiency or the execution and mailing of Form 872-T, the letter in question did not constitute a valid termination of the consent agreement. Cases decided before the introduction of Form 872-T, such as Johnson v. Commissioner,68 T.C. 637 (1977), and Borg-Warner Corp. v. Commissioner,660 F.2d 324 (7th Cir. 1981), revg. T.C. Memo. 1979-350, were found to be no longer on point. 86 T.C.     at pp. 8-9 of Slip Opinion. Because the letter from petitioners' counsel to Special Agent Washington does not conform to *494 the terms of the consents signed by petitioners, it cannot constitute termination of the consents. [2]
Petitioners' second contention is that it was a violation of I.R.S. procedures for Agent Cantu to seek consents from petitioners after their case had been referred to the C.I.D. for a criminal investigation thereby rendering the consents invalid. This contention is meritless. When a revenue agent, in the course of a civil examination of a taxpayer's returns, *495 concludes that there exists the potential for criminal liability the case is promptly referred to the C.I.D. Although the criminal investigation predominates, the examination of the taxpayer's returns then becomes a joint civil and criminal investigation. Internal Revenue Manual (I.R.M.) sec. 4565.31(5). In the interest of administrative economy and to protect the criminal case, the civil examination is typically suspended. I.R.M. sec. 4231 (Tax Audit Guidelines for Internal Revenue Examiners, section 981). Nevertheless, while the C.I.D. is conducting a criminal investigation, the revenue agent's duties do not cease. He remains obligated to take "any action necessary to protect the interest of the Government with respect to the statutory period for assessment." I.R.M. sec. 4565.6(1). Where appropriate, the revenue agent shall solicit consents from taxpayers during the pendency of a criminal investigation by mail. I.R.M. sec. 4565.6(4). This is exactly what Agent Cantu did by his letter dated February 17, 1982. In short Agent Cantu solicited the execution of the Forms 872-A "by the book." There was no breach of I.R.S. procedures. [3]
*496 In any event it is established that the failure to comply with I.R.M. requirements, which are merely directory and not mandatory, will not render the action of respondent invalid. United States v. Horne,714 F.2d 206 (1st Cir. 1983). [4] Cf. Einhorn v. DeWitt,618 F.2d 347, 349-350 (5th Cir. 1980). Petitioners' final argument is that the period of limitation for assessing tax for the taxable years in issue has expired because the consents were delivered to the special agents under duress. Petitioners contend that Mrs. Jordan, understandably upset about the spectre of possible criminal prosecution, was deprived of her free will by the special agents' request for the consents she and her husband previously signed, but had not dated. They emphasize that at the time of this request Mrs. Jordan had just been formally read her constitutional rights and argue that the special agents told her that it would be to her benefit to hand over the consents. Furthermore, neither Mr. Jordan nor petitioners' C.P.A., for whom *497 petitioners had executed a power of attorney appointing him as their representative before the I.R.S., was present at this meeting. We defined duress in Diescher v. Commissioner,18 B.T.A. 353, 358 (1929), as follows: It is now well settled that if an act of one party deprives another of his freedom of will to do or not to do a specific act the party so coerced becomes subject to the will of the other, there is duress, and in such a situation no act of the coerced person is voluntary and contracts made in such circumstances are void because there has been no voluntary meeting of the minds of the parties * * * In determining if an act is done under duress, we look to the subjective mental state of the actor. Stanley v. Commissioner,81 T.C. 634, 638 (1983). In this regard we apply a uniform Federal standard instead of state law. Stanley v. Commissioner,supra.
Whether Mrs. Jordan delivered the signed consents to the special agents under duress presents a factual issue that we cannot resolve on the record before us. For this reason, petitioners' motion must be denied. In summary, petitioners have presented three arguments *498 in support of their motion for summary judgment. Only if we determine that, based on the record before us, none of these arguments presents any genuine issues of material fact regarding the expiration of the applicable period of limitations can we rule in petitioners' favor. We have determined that petitioners' first two arguments present no such question of material fact. However, the question of duress presented by petitioners' does present issues of fact that must be resolved at a trial of the severed limitations issue. Although we have serious doubts that petitioners can satisfy their burden of proving duress at trial based upon the pleadings and affidavits before us, such doubts do not enable us to refuse them their day in court with respect to an issue that is not clearly frivolous. Therefore, this case shall be restored to the general docket for trial without prejudice to either party to determine the question of whether the applicable period of limitations has expired. [5]
*499 An appropriate order will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and all Rule references are to this Court's Rules of Practice and Procedure.↩
2. We recognize that the letter from petitioners' counsel to Special Agent Washington indicates that counsel believed petitioners had executed Forms 872, and not Forms 872-A. Our acknowledgment of counsel's apparent confusion does not change our opinion inasmuch as there is no provision whatsoever for the unilateral termination of the consent that has been granted for a set period of time on Form 872. We also recognize that respondent did not return signed copies of the consents to petitioners. This is not required of respondent and is immaterial to our decision. Findlay v. Commissioner,332 F.2d 620 (2d Cir. 1964), affg. in part and revg. in part on other issues 39 T.C. 580, 588↩ (1962).
3. The only point at which we can discern that Agent Cantu departed from published I.R.S. procedures was his failure to be present when Special Agent Washington solicited the consents from Mrs. Jordan during his initial interview. I.R.S. procedures provide for personal contact to obtain the consent only in extraordinary circumstances. I.R.M. sec. 4565.6(4). The revenue agent assigned to a case is to accompany the special agent during such an in-person solicitation of consents for the extension of the period to assess taxes. I.R.M. sec. 4565.6(4). Because this is not the alleged impropriety to which petitioners take exception in this case and, in light of our holding on this issue, we deem it to be of no consequence.↩
4. See Bridges v. Commissioner,T.C. Memo. 1983-763; Tucker v. Commissioner,T.C. Memo. 1983-210↩.
5. In accordance with Rule 121(c) our order denying petitioners' motion for summary judgment will specify that the facts and argument presented by petitioners with respect to their first and second arguments in support of this motion, that the letter from counsel to Special Agent Washington terminated the consents and that Agent Cantu violated I.R.S. policies by soliciting the consents after the case had been referred to C.I.D. and thereby rendering the consents void, are insufficient to show that the period of limitations had expired.↩