EDWARD P. JOHNSON AND ESTATE OF HELEN T. JOHNSON, EDWARD P. JOHNSON, ADMINISTRATOR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ESTATE OF WALTER P. MCFARLAND, DECEASED, MICHAEL T. MCFARLAND, EXECUTOR, AND BERTHA L. MCFARLAND, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 7461–73, 7718–73. Filed July 28, 1977.

*Lester J. Tanner,* for the petitioners in docket No. 7461–73.
*Robert E. Stroud,* for the petitioners in docket No. 7718–73.
*Stephen M. Friedberg* and *St. Clair Reeves,* for the respondent.

### OPINION

DAWSON, *Judge:* These two cases are before the Court on petitioners' motions for summary judgment filed March 25, 1977, with respect to docket No. 7461–73, and April 11, 1977, with respect to docket No. 7718–73, pursuant to the provisions of Rule 121, Tax Court Rules of Practice and Procedure. Respondent filed objections to the motions on April 15, 1977, and a hearing was held in Washington, D.C., on April 27, 1977. Petitioners in each docket filed a memorandum at the hearing urging summary judgment in their favor. Re-

spondent subsequently filed a memorandum in opposition on May 27, 1977, to which petitioners replied on June 27, 1977.

Respondent determined the following Federal income tax deficiencies and an addition to tax for the year 1965 with respect to the petitioners:

| Docket No. | Deficiency | Addition to tax sec. 6651(a) |
|---|---|---|
| 7461–73 (Johnsons) | $304,816.94 | $15,385.14 |
| 7718–73 (McFarlands) | 169,945.41 | |

The ultimate issue framed by the pleadings is whether, on the facts presented, a letter sent petitioners in docket No. 7718–73, on January 2, 1973, and a letter sent to petitioners in docket No. 7461–73, on March 6, 1973, by respondent's authorized agent, constituted notice of termination of Appellate Division consideration to their respective recipients as a matter of law. No material facts are in dispute. All pertinent facts are set forth below.

Petitioners McFarland and Johnson were audited simultaneously by the Internal Revenue Service with respect to a business venture common to both of them. Although alleged deficiencies in Federal income taxes were discussed by petitioners and respondent with respect to several tax years, the year 1965 is the only one affected by either of the petitioners' motions herein. Negotiations between the parties were lengthy due to the complexity of the issues involved. As those discussions protracted, it became necessary for the parties to extend by agreement the time period in which deficiencies in income taxes could be assessed by respondent.

Pursuant to the provisions of section 6501(c)(4) of the Internal Revenue Code, petitioners Johnson executed Form 872, Consent Fixing Period of Limitation Upon Assessment of Income Tax, with respect to taxable year 1965 during 3 successive years on April 22, 1969, May 27, 1970, and February 16, 1971. The last two were executed for respondent by William A. Johnston, appellate conferee, on May 28, 1970, and February 19, 1971. Execution of the third Form 872 extended the statute of limitations upon assessment through June 30, 1972. On May 30, 1972, after the Johnson case had been pending in the Appellate Division before William A. Johnston, appellate conferee, for more than 2 years, the

parties agreed to extend the period for the year 1965 once more for an indefinite time. Thus, the Johnsons signed Form 872–A, Special Consent Fixing Period of Limitation Upon Assessment of Income Tax, which was executed on behalf of respondent by William A. Johnston, appellate conferee, on June 1, 1972.

Meanwhile, petitioners McFarland had executed with respondent a similar series of Forms 872 extending the period of limitations upon assessment for both taxable years 1965 and 1966 through September 30, 1972. On August 26 and 28, 1972, petitioners executed a Form 872–A which extended indefinitely the statute of limitations upon assessment for taxable years 1965 and 1966. The agreement was signed on behalf of respondent by the same William A. Johnston on September 5, 1972.

The Form 872–A executed by the petitioners in each docket stated, in pertinent part, that assessment of Federal income taxes could be made:

at any time on or before the 90th day after (1) mailing by the Internal Revenue Service of written notification to the taxpayer(s) of termination of Appellate Division consideration, or (2) receipt by the Regional Appellate Division branch office considering the case of written notification from the taxpayer(s) of election to terminate this agreement * * *

We are concerned with whether "written notification * * * of termination of Appellate Division consideration" within the meaning of clause (1) above subsequently was sent to each petitioner by the respondent.

During the ensuing settlement negotiations, petitioners McFarland made a request to Appellate Conferee Johnston that further Appellate Division consideration of their taxable year 1965 be held in abeyance until respondent had completed the audit of all of petitioners' subsequent years then under examination. Mr. Johnston responded, by letter dated November 21, 1972, that such a request was denied as unreasonable and inappropriate. The last paragraph in that letter set forth respondent's position in the following manner:

I believe that the suggested basis for settlement of the instant case, which I have related, is fair to both Mr. McFarland and to the Government. I urge that you and he consider it carefully and advise me by December 1, 1972

whether disposition of the case as I suggest is acceptable or whether you desire a statutory notice of deficiency.

After requesting an extension of time to respond until December 8, 1972, the former counsel of the petitioners McFarland wrote Mr. Johnston on December 7, 1972, requesting formally that any statutory notice of deficiency for taxable years 1965 and 1966 be deferred pending audit of the subsequent years under consideration.

Mr. Johnston refused the McFarland request on January 2, 1973, by means of the following letter, the body of which is set forth in its entirety:

We have considered the protest, evidence and arguments you submitted to support your position regarding the tax identified above. Since we were unable to reach a satisfactory agreement in your case, a statutory notice of deficiency will be sent to you.

If you desire to contest this matter further without first paying the tax, you may, after receiving the notice, file a petition with the United States Tax Court for a redetermination of your tax liability.

No further communication was effected between the parties prior to July 25, 1973, except for notice from petitioners' former counsel to respondent of his withdrawal from the case. A statutory notice of deficiency for 1965 in the amount of $169,945.41, was mailed to the McFarlands on that date which was signed by W. A. Johnston, appellate conferee.

Similar circumstances surround the pre-notice of deficiency interaction between the Johnsons and respondent. Following the signing of the Form 872–A in early June of 1972, some lines of communication remained open between the parties until Mr. W. A. Johnston sent the letter set forth hereinafter, in its entirety, to petitioners on March 6, 1973:

Inasmuch as no mutually satisfactory basis of settlement has been reached concerning your income tax liability for the year 1965, a statutory notice of deficiency will be issued at an early date.

It is conceded that no further contacts were made between the parties from that point forward until respondent mailed a statutory notice of deficiency to the Johnsons in the amount of $304,816.94, plus an addition to tax of $15,385.14 under section 6651(a) of the Code on July 25, 1973. That notice, too, was signed by W. A. Johnston, appellate conferee. Neither notice was sent within 90 days of respondent's last preceding correspondence.

The Johnsons invoked this Court's jurisdiction over their case by filing a timely petition on October 11, 1973. The McFarlands filed their timely petition on October 24, 1973.

Contending that the respective letters from Appellate Conferee Johnston dated January 2, 1973, and March 6, 1973, constituted notice of termination of Appellate Division consideration, petitioners McFarland and Johnson moved for summary judgment with respect to the taxable year 1965. If petitioners' interpretation of those letters is correct, the July 25, 1973, statutory notices of deficiencies were barred by the statute of limitations because more than 90 days had passed since each letter was issued, a violation of the agreed terms set forth in each Form 872–A.

Petitioners' primary contention centers on the express language contained in the letters in issue. It is argued that each is so simply and plainly written, and so unequivocal in nature, that we not only should not, but cannot, look beyond the four corners of that document in deciding this case. Petitioners argue further that, since no form letter exists for this purpose, no particular language is required to be used by statute, and the author had both apparent and actual authority to issue the notices, and that they were never exposed to any overt indication that the respective letters did not constitute the notices.

Respondent has frequently shifted his arguments from one premise to another. In summary, he variously has alleged (1) that the appellate conferee's letters could not have been interpreted as notices of termination of Appellate Division consideration because that individual did not have authority to issue a statutory notice of deficiency or otherwise dispose of a case; (2) that no such notice was given here because respondent has a national policy never to issue notice of termination letters in unagreed cases; (3) that the plain language of the letters only indicates that statutory notices will issue, and does not mention termination of consideration; (4) that those letters cannot *at once* be notice of termination of consideration *and* also notice that a statutory notice will be forthcoming; (5) that termination normally is accomplished through the issuance of a form letter; and (6) that Appellate Division consideration terminates only upon issuance of a statutory notice.

One salient point emerges from the record before us, i.e., whether read independently or in conjunction with the parties' actions, the letters in issue exude the aura of finality required for a finding that each constituted notice of termination of Appellate Division consideration. Therefore, we hold that each letter constituted such notice as a matter of law, and that both July 25, 1973, statutory notices of deficiencies are vitiated due to respondent's failure to abide by the time period agreed upon in each Form 872–A as a limitation upon assessment. Consonant with that holding, we will grant both petitioners' motions for summary judgment with respect to their taxable year 1965.

Section 6501(a) of the Code sets forth the general rule that taxes shall be assessed within 3 years after a return is filed. An exception to that rule is contained in section 6501(c)(4):

EXTENSION BY AGREEMENT.—Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

It is clear from the excerpt above that written documents are an essential element of any agreed extension of the statute of limitations upon assessment. Two consent forms have been prepared by the Internal Revenue Service to facilitate the making of extensions, and both were used at one time or another by the parties herein. Form 872 provides for an extension of time for a fixed, predetermined period. Form 872–A, subsequently created for use by the Appellate Division only, permits the parties to extend the statute of limitations upon assessment for an indefinite period. See Rev. Proc. 71–11, 1971–1 C.B. 678. The two means by which that period may be terminated are set forth unequivocally on the face of the written agreement: (1) The Internal Revenue Service may send written notice of termination of Appellate Division consideration to the taxpayer, or (2) the taxpayer may send the Appellate Division written notice of his election to terminate the agreement. In any event, a statutory notice simply could be issued to the taxpayer at any time which

would obviate the need to consider expiration dates. Again, written notice is required for either party's actions to be upheld.

The parties before the Court each signed a Form 872–A bearing the standard agreement. The operative provisions of each agreement are clear within the four corners of the document and each party has demonstrated to the Court during these proceedings a good fundamental understanding of precisely what those provisions mean. They cannot agree, however, on what significance is to be accorded two letters issued separately by the same appellate conferee for respondent at a later date.

Although the Internal Revenue Service has prepared form agreements to be used when extensions are made, neither section 6501(c)(4) nor the regulations promulgated thereunder require anything more than a written agreement extending the time for an agreed period. See sec. 301.6501(c)–1(d), Proced. & Admin. Regs. Congress did not choose to elevate respondent's rules and regulations concerning this section to a higher plane than administrative suggestions as it occasionally has done by express language in other sections. See sec. 307(b)(2); sec. 1033(a)(2)(A). Moreover, the Internal Revenue Manual has never carried the force of law. It directs respondent's agents concerning what shall be done or shall not be done, but cannot determine what did happen. The parties simply are left to their own devices. Here the parties used a Form 872–A which, by agreement, extended the time for assessment for an indefinite period which could be terminated by either party in accordance with one of the two means listed on the face of the instrument. Once again the parties are left to their own ingenuity for giving "written notification" of either termination of consideration or election to terminate the period. The agreement requires only *written notification*. Nothing could be plainer. If the correspondence in issue contains sufficient elements of notice, whatever internal preferences or mandates either party places upon its employees are immaterial because notice will be deemed to have been given. Respondent argues repeatedly that the letters cannot constitute legally cognizable notice because they were not form letters, did not use proper terminology, were not executed by the proper official, or were intended to

represent some other less noteworthy communication. Taken as a whole, respondent's position is tantamount to an admission of error. Respondent's failure to issue statutory notices of deficiencies within 90 days after mailing the letters was error. We note that respondent subsequently reversed an earlier position and conceded that Mr. Johnston was vested with authority to close the cases, transmit the letters in issue, and even issue statutory notices. Thus, whatever apparent authority he may have had is of no consequence, for he had actual authority. Mr. Johnston's continuous handling of these related taxpayers and dockets, his signing of the Forms 872, Forms 872–A, letters to the petitioners on official stationary, and ultimately his signing of the statutory notices of deficiencies caused the taxpayers to believe that he had absolute authority and that his decision was final with regard to the year 1965.

Language contained within the letters is determinative of the issue presented. Not only are the letters brief and to the point, but the vocabulary and verb tense used throughout connote finality of decision. The January 2, 1973, McFarland letter uses the past tense when it states "We have considered the protest, evidence, and arguments." It then proceeds to state in the very next sentence that "we were unable to reach a satisfactory agreement in your case," and then, with great authority, "a statutory notice of deficiency will be sent to you." The second paragraph states flatly that if the petitioners desired to "contest the matter further without first paying the tax" they could file a petition with this Court once the statutory notice was received. Not only does the plain language connote termination of Appellate Division consideration here, but the adaptation of most of the language from the standard statutory notice of deficiency accentuates the inference of finality of decision. The March 6, 1973, letter to the Johnsons was more abbreviated, but its single paragraph was substantially similar in content, word choice, verb tense, and meaning to the first paragraph in the McFarland letter. No mention was made of the taxpayers' post-statutory-notice right to appeal to this Court. We can only conclude that each letter constituted notice to the respective petitioners that the Appellate Division had ceased to consider their case for settlement. It is implicit from those letters that the Appellate

Division deemed all concerned parties to be at an impasse, particularly since the alleged deficiencies arose out of the same business operation.

Once the facts and circumstances surrounding the issuance of those letters are considered, there is no doubt that an impasse was at hand. The parties had negotiated for many years prior to the issuance of those letters, and the statute of limitations had been extended by agreement several times. Appellate Conferee Johnston wrote the McFarlands' former counsel on November 21, 1972, rejecting their request that any statutory notice for 1965 be held in abeyance pending audit of all later years. It is clear that negotiations were almost over at that date because he presented petitioners with 10 days to decide whether to accept his terms or be issued a statutory notice of deficiency. Since the only response by the McFarlands was a written repetition of their earlier oral request for abatement pending audit of later years, Mr. Johnston sent the January 2, 1973, letter in issue. When viewed from this perspective, the letter can represent only the final notice that Appellate Division consideration of the case had ceased. Moreover, the parties agree that no significant communications, oral or written, were made between them during the interim between the mailing of those letters and issuance of the statutory notices of deficiencies on July 25, 1973.[1]

Respondent's internal policies against issuing notices of termination of Appellate Division consideration are meaningless to our deliberations. If respondent elects to forgo options available by agreement, that represents an internal value judgment. Respondent's internal requirements of separate form letters for different notices likewise are immaterial, as is his apparent inability to assure compliance with his rules by his own agents. Once a letter is sent which contains all the necessary elements of a certain type of notice, and no overt indication of invalidity exists to alert the recipient as to

---

[1] Both parties hereto dwelled at some length upon this Court's action in another case involving a Form 872–A in which no formal opinion was issued. We note only that the specific language of the letter in issue in that case and the postcommunication interaction between the parties thereto render that case clearly distinguishable from this one.

possible error, notice has been given in conformity with the terms of the written agreement.

Accordingly, petitioners' motions for summary judgment will be granted. Their tax liability for the year 1965 is barred by the statute of limitations because more than 90 days elapsed after respondent gave written notice of termination of Appellate Division consideration.

*Appropriate orders and decisions will be entered.*