BORG–WARNER CORPORATION,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 80–1818.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 1, 1980.

Decided Sept. 29, 1981.

Nora A. Bailey, Ivins, Phillips & Barker, Washington, D. C., for petitioner-appellant.

Richard W. Perkins, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for respondent-appellee.

Before SPRECHER, Circuit Judge, CUDAHY, Circuit Judge, and WILL,* Senior District Judge.

WILL, Senior District Judge.

This is an appeal from the United States Tax Court's decision in favor of the Commissioner of Internal Revenue (Commission-

* The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

er) in the amount of $4,316,132.06. The sole issue on this appeal is whether the assessed deficiency in the taxpayer's income tax for the year 1968 was barred by the statute of limitations under 26 U.S.C. § 6501.[1] For the reasons stated herein, we hold that the asserted deficiency for the year in question is barred by the statute of limitations. We therefore reverse the Tax Court's judgment.

## I. BACKGROUND

On June 3, 1969, the taxpayer filed its federal income tax return for the year 1968. Although the statutory period in which the Service could assess a deficiency with respect to the taxpayer's 1968 tax year normally would have lapsed on June 13, 1972, the taxpayer and the Service timely agreed in writing on four occasions to extend this statutory period pursuant to section 6501(c)(4) of the Internal Revenue Code. On each of these occasions, the parties executed Internal Revenue Service Form 872, entitled "Consent Fixing Period of Limitations Upon Assessment of Income and Profits Tax." These agreements provided that the Service could assess a deficiency for the 1968 tax year at any time before a specified date. The last such agreement extended the period for filing a deficiency to December 31, 1974.

On July 18, 1974, the taxpayer and the Service executed Internal Revenue Service Form 872–A, which extended the period for assessing taxes to a date to be determined as provided therein. This form provided, in relevant part:

> That the amount(s) of any Federal Income tax due under any return(s) made by or on behalf of the above-named taxpayer(s) for the tax year(s) ended December 31, 1968, under existing or prior revenue acts, may be assessed at any time on or before the 90th day after (1) mailing

by the Internal Revenue Service of written notification to the taxpayer(s) of termination of Appellate Division consideration, or (2) receipt by the Regional Appellate Division branch considering the case of written notification from the taxpayer(s) of election to terminate this agreement, except that if in either event a statutory notice of deficiency in tax for any such year(s) is sent to the taxpayer(s), the running of the time for making any assessment shall be suspended for the period during which the making of an assessment is prohibited and for 60 days thereafter. . . .

This form was signed by an officer of the taxpayer and by Kenneth E. Christian, Appellate Conferee, on behalf of Fred J. Ochs, Assistant Regional Commissioner, Appellate.

On June 28, 1973, the taxpayer had filed a written protest to the examination report prepared by the District Director's Office. This report was forwarded to the Appellate Division. Between June 28, 1973 and October 18, 1974, representatives of the taxpayer, John J. Crunican and Neal F. Farrell, met with and wrote to Appellate Conferees Kenneth E. Christian and Anna C. Jobson, in an effort to resolve the parties' disagreement over the taxpayer's liability for the tax year 1968. These efforts apparently proved unavailing, however, for on October 18, 1974, Mr. Christian wrote the following letter to Mr. Crunican:

> Dear Mr. Crunican:
>
> Conferee Anna Jobson and I have carefully considered the evidence and arguments in support of your position as discussed during our two conferences with you and Mr. Neal Farrell, and as set forth in your protest and supplemental information, the latest of which accompanied your letter of August 29, 1974.

---

1. 26 U.S.C. § 6501(c)(4) provides:

Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

We regret that we have been unable to agree upon a mutually satisfactory basis for closing the case, although settlement proposals and counterproposals were made and considered by the parties. Accordingly, this is to inform you that it is our intention to recommend issuance of a statutory notice of deficiency reflecting the adjustments proposed by the District Director.

Your cooperation has been very much appreciated.

Very truly yours,
/s/ Kenneth E. Christian
Kenneth E. Christian
Appellate Conferee
cc: Miss Anna C. Jobson

Shortly after receiving this letter, Mr. Crunican telephoned Mr. Christian to discuss the contents of the forthcoming statutory notice of deficiency. Mr. Crunican also asked Mr. Christian when he could expect to receive the notice of deficiency. He was told by Mr. Christian that he could expect it some time in December 1974. On December 9, 1974, Mr. Crunican, not having received the notice of deficiency, again telephoned Mr. Christian to inquire as to the status of the notice and to ask that it be issued before the end of the month. Mr. christian stated that the case had been sent to the Regional Counsel for approval of the issuance of the notice on November 12, 1974.

There were no further communications between the parties until January 17, 1975, the 91st day after Mr. Christian mailed his previously quoted letter of October 18, 1974 to Mr. Crunican. On January 17, Mr. Christian telephoned Mr. Crunican purportedly to outline a settlement proposal differing slightly from the last such proposal discussed by the parties. At Mr. Crunican's request, a conference was scheduled for January 22, 1975. Mr. Joseph E. McAndrews and Ms. Nora A. Bailey, outside counsel retained by the taxpayer on November 11, 1974, appeared at that conference on behalf of the taxpayer and stated their position that the statutory period for filing a notice of deficiency had expired on January 16, 1975.

The actual notice of deficiency was not mailed to the taxpayer until April 18, 1975.

The taxpayer filed a timely petition for redetermination of the deficiency with the Tax Court on July 10, 1975. Thereafter, the taxpayer filed with the court a motion for summary judgment contending that the notice of deficiency in this case was untimely. The taxpayer argued that Mr. Christian's letter of October 18, 1974 constituted written notification of termination of Appellate Division consideration. Pursuant to the parties' Form 872–A agreement regarding extension of the statutory period of filing a notice of deficiency, the taxpayer contended, the period for filing such a notice expired 90 days after Mr. Christian's letter was mailed, or on January 16, 1975, long before the notice of deficiency in this case was mailed on April 18, 1975. The Service opposed the taxpayer's motion, asserting that Mr. Christian's letter was not notification of termination of Appellate Division consideration but simply a notification of Mr. Christian's intention to recommend to the Regional Counsel that a notice of deficiency be issued.

Judge Caldwell of the Tax Court agreed with the Service, holding that Mr. Christian's letter was not a notification of termination of Appellate Division consideration. Judge Caldwell noted that the letter does not specifically state that Appellate Division consideration had terminated; it simply set out what steps Mr. Christian intended to take towards terminating Appellate Division consideration in the future. Moreover, according to the court, its reading of the letter was entirely consistent with the Service's policy of not issuing notice of termination letters in cases, like this one, in which the Service and the taxpayer had not resolved their differences. Consequently, Judge Caldwell held, the parties' agreement to extend the statutory period for issuing a notice of deficiency did not expire on the 90th day following Mr. Christian's letter and, thus, the notice of deficiency in this case was not untimely.

On April 30, 1976, the taxpayer filed a motion to vacate the trial judge's order. Chief Judge Dawson denied this motion for essentially the reasons stated earlier by Judge Caldwell. Some time thereafter, the taxpayer filed a motion to reconsider the denial of summary judgment on the ground that *Johnson v. Commissioner*, 68 T.C. 637 (1977), a case decided subsequent to the taxpayer's motion for summary judgment, compelled a different result. A third Tax Court Judge, Judge Tannenwald, denied this motion as well, stating that he found nothing that would justify his reversing the prior decisions of two other judges. On March 17, 1980, a deficiency in the amount of $4,316,132.06 was entered against the taxpayer.

## II. DISCUSSION

Agreements between taxpayers and the government extending the statute of limitations for the assessment of taxes, including agreements to extend the limitations period indefinitely, like the one at issue here, have long been recognized as valid. *See McManus v. Commissioner*, 583 F.2d 443, 446 (9th Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1501, 59 L.Ed.2d 773 (1979). The sole issue in this case, as we noted above, is not whether the agreed extension of the statute of limitations is valid but whether Mr. Christian's letter of October 18, 1974 was notification of the end of Appellate Division consideration as contemplated by IRS Form 872–A and, thus, whether the extension of the limitations period terminated 90 days thereafter on January 16, 1975.

The starting point in our analysis is the language of the letter itself. We believe that the ordinary sense of the letter is that Appellate Division consideration of this case had terminated, the decision having been made that further discussions would be fruitless. Using the past tense consistently, Mr. Christian wrote that he and Ms. Jobson "have carefully considered the evidence and arguments in support of your position" and have regretfully concluded that "we have been unable to agree upon a mutually satisfactory basis for closing the case." He further states that the taxpayer's "cooperation has been very much appreciated." There is no mention in the letter of any outstanding proposals, no hint of the need or utility of further discussions, and no invitation to the taxpayer to submit additional information or new offers.

When this letter is read in light of the circumstances surrounding its issuance, it is even clearer that the letter signaled the end of the Appellate Division's consideration of the taxpayer's case. The letter followed over sixteen months of fruitless discussions between the taxpayer and the Appellate Division. Following the issuance of the letter, there were no substantive discussions relating to the case between the taxpayer and the Appellate Division until the 91st day after the mailing of the letter. The only two telephone conversations between Mr. Crunican and Mr. Christian in the period October 18, 1974 to January 16, 1975 clearly indicate that, in the parties' understanding, the Appellate Division's consideration of the case had ended and a notice of deficiency was in the process of being issued. Mr. Crunican and Mr. Christian discussed only the anticipated notice of deficiency, when it could be expected, and what it would contain.

Mr. Christian stated during his first telephone communication with Mr. Crunican following issuance of the October 18 letter that the taxpayer could expect to receive the notice of deficiency some time in December, well within ninety days of the mailing of the letter. In his second conversation on December 9, Mr. Christian advised Mr. Crunican that the case had been sent to the Regional Counsel on November 12, thus confirming that, as the October 18 letter indicated, Appellate Division consideration had terminated. Neither party suggested in their telephone conversations that additional settlement discussions be scheduled, or that additional information or proposals would or should be considered. Thus, nothing in the 90-day period following the issuance of Mr. Christian's October 18 letter indicates that Appellate Division consideration of the taxpayer's case was continuing.

On the contrary, all indications were that it had concluded and a notice of deficiency would be forthcoming.

In *Johnson v. Commissioner*, 68 T.C. 637 (1977), the Tax Court reached the same conclusion with respect to similar letters sent to taxpayers by appellate conferees. In both of the cases consolidated in *Johnson*, the taxpayers had executed Forms 872–A extending the statute of limitations for an indefinite period. After almost three years of discussion with the Appellate Division, the taxpayer in one of the cases received a brief letter which stated:

> Inasmuch as no mutually satisfactory basis of settlement has been reached concerning your income tax liability for the year 1965, a statutory notice of deficiency will be issued at an early date.

*Id.* at 640. The taxpayer in the other case, after lengthy negotiations with the Appellate Division, received a letter which stated:

> We have considered the protest, evidence and arguments you submitted to support your position regarding the tax liability above. Since we were unable to reach a satisfactory agreement in your case, a statutory notice of deficiency will be sent to you.
>
> If you desire to contest this matter further without first paying the tax, you may, after receiving the notice, file a petition with the United States Tax Court for a redetermination of your tax liability.

*Id.* at 640. There were no substantive communications in either case between the taxpayers and the Appellate Division following the issuance of these letters until the taxpayers received notices of deficiency. In both cases, the notices of deficiency were mailed more than 90 days after the letters quoted above. The taxpayers argued that these letters constituted notification of the termination of Appellate Division consideration and that, consequently, the time for filing a notice of deficiency expired 90 days after the letters were mailed.

The Tax Court agreed with the taxpayers in *Johnson*. The court noted that the language of both letters, their brevity, consist-

ent use of the past tense, and so forth, "exude[d] the aura of finality." *Id.* at 642. When the letters were considered in light of the circumstances surrounding them, the court concluded, there could be no doubt that they served simply as notice that Appellate Division consideration was at an end. *Id.* at 645.

The letter at issue in the present case mirrors those in *Johnson* in a number of respects. Like the letters in *Johnson*, it notes the parties' failure to resolve the case despite consideration of the taxpayer's arguments and evidence. Like the letters in *Johnson*, the one at issue here makes no mention of the need or even the desirability of further discussions on settlement, and requests no additional information. Moreover, like those in *Johnson*, the letter in this case refers to the issuance of a statutory notice of deficiency.

There is, of course, one difference between the letter in this case and those in *Johnson* : the appellate conferee here wrote "it is our intention to recommend issuance of a statutory notice of deficiency," whereas in *Johnson*, the appellate conferees wrote that a notice of deficiency "will be sent to you" or "will be issued at an early date." This difference is not a material one, however. The critical event so far as the limitations period is concerned is not, as the Commissioner seems to suggest, the issuance of a notice of deficiency or even the acceptance of the appellate conferee's recommendation that a notice of deficiency issue, but *the termination of the Appellate Division's consideration of the case*. The purpose of agreements extending the statutory limitations period is to allow a taxpayer to seek compromises of its asserted tax liability. *See United States v. Herman*, 186 F.Supp. 98 (E.D.N.Y.1960). When the possibilities of settlement have been exhausted, the quid pro quo for the extension of this limitations period disappears.

■ At that point, it is incumbent upon the Service to issue a notice of deficiency in a timely fashion, which Revenue Procedure 71–11, 1971–1 C.B. 678, and Form 872–A define as 90 days. It is clear that, regard-

less of the particular language used in the letter in this case, its import is that the possibilities of settlement had been exhausted and the Appellate Division's consideration of the case had ceased. That the parties also understood this to be the correct interpretation of the letter is clear from their subsequent telephone conversations about when the notice of deficiency would issue. The letter constitutes, therefore, a notice of termination of Appellate Division consideration which started the 90-day limitations period running.

Furthermore, contrary to the Commissioner's contention, Mr. Christian's statement that "it is our intention to recommend issuance of a statutory notice of deficiency" does not indicate that Mr. Christian was only making a recommendation to his supervisor who, in turn, might or might not agree to terminate Appellate Division consideration. "Recommend" and "recommendation" are terms of art used to describe the process that the Appellate Division follows to obtain the Regional Counsel's approval to issue a notice of deficiency. *See* 26 C.F.R. § 601.106(d)(2)(ii);[2] Internal Revenue Manual, Position Profile 33(II)(D).[3] Given the circumstances surrounding Mr. Christian's letter, the phrase "it is our intention to recommend issuance of a statutory notice of deficiency" obviously refers not to a recommendation by Mr. Christian to his supervisor that Appellate Division consideration be terminated, but to the Appellate Division's recommendation to Regional Counsel—after termination of the division's consideration of the case—that, as the letter states, a notice of deficiency be sent to the taxpayer. Consequently, there is nothing in the language of this letter which indicates that it is anything other than a notification of termination of Appellate Division consideration.

The Commissioner places great importance on the fact that Mr. Christian did not expressly state that his letter was a notification of termination of Appellate Division consideration. He points out that both of the form letters the St. Louis Appellate Division uses to *terminate* agreed cases state clearly and simply that "this is your notice of termination of Appellate Division consideration referred to in Consent Form 872–A." According to the Service, the absence of a similarly direct, unambiguous statement in Mr. Christian's letter to the taxpayer indicates that his letter was not a notification of termination of Appellate Division consideration.

This argument fails for the simple reason that, regardless of whether Mr. Christian could have stated more clearly that Appellate Division consideration had ended, the fact remains that he expressed this idea in the letter he wrote to Mr. Crunican. Certainly, the Service should address taxpayers in the clearest and most straight-forward manner possible. The Service's failure to do so, however, does not mean that we should ignore the import of its less succinct communications. Neither Revenue Procedure 71–11 nor Form 872–A requires that any particular language be used in a notification of termination. Courts in the past have not required precise, explicit language or adherence to the language used in statutes or regulations in communications between taxpayers and the Service. *See, e. g., Collins v. Woodworth,* 109 F.2d 628, 630 (6th Cir. 1940). Additionally, we believe that a taxpayer is entitled to take a letter at face value. It would be unreasonable and impracticable to expect, as the Service apparently does, that a taxpayer compare any correspondence it receives from the

---

**2.** 26 C.F.R. § 601.106(d)(2)(ii) provides in part:

If *after consideration of the case by the Appellate Division* of the region it is determined that there is a tax deficiency in income ... tax ..., to which the taxpayer does not agree, a statutory notice of deficiency will be prepared and issued by the Appellate Division after consideration by the regional counsel of such statutory notice and of the memo-

randum *recommending* the issuance of such notice.... [Emphasis added.]

**3.** IR Manual, Position Profile 33(II)(D) provides, in part:

Frequent contacts between the ARC (Appellate) and Regional Counsel are required on such matters as ... consideration of action memoranda *recommending* issuance of statutory notices, .... [Emphasis added.]

Service with letters or notices issued in other cases to ascertain whether the correspondence really means what it says.

We find equally unconvincing the Commissioner's argument that, since Revenue Procedure 71–11 states that "[n]otification by the Service to the taxpayer of termination of Appellate Division consideration will normally be accomplished by issuance of a form letter," the absence of a form letter in this case indicates that Mr. Christian's letter was not a notification of termination of Appellate Division consideration. First, the revenue procedure expressly states that a notice of termination "normally," not "always," will consist of a form letter. Consequently, while the individualized letter in this case may not be a run-of-the-mill notification of termination, this does not mean that it is an ineffectual one. Second, the argument in this regard is at least disingenuous, since the Service admittedly had no form letter for notifying taxpayers of the end of Appellate Division consideration in unagreed cases such as this one. Thus, an individualized letter was the only way in which the Service could have notified the taxpayer in this case of termination of Appellate Division consideration.[4]

 The Commissioner further contends that the letter at issue in the present case does not constitute a legally cognizable notification of termination of Appellate Division consideration because Mr. Christian, the author of the letter, was without authority to end the division's consideration of the case. According to the Service, only Mr. Christian's supervisor had authority to speak for the Appellate Division on this subject. As the Tax Court noted in *Johnson*, however, where the Appellate Conferee

has handled a taxpayer's case throughout, has signed Form 872–A extending the statute of limitations, and notifies the taxpayer, on official stationery, that the parties have reached an impasse, he is clothed with apparent authority to terminate Appellate Division consideration. *See Johnson v. Commissioner, supra* at 644.

In the present case, Mr. Christian signed Form 872–A on behalf of the Service, handled the taxpayer's case throughout the Appellate Division's consideration, and wrote to the taxpayer on Appellate Division stationery expressing regret that the parties could not reach a mutually agreeable settlement of the case. Mr. Christian thus had at least apparent authority to terminate Appellate Division consideration of this case. Furthermore, from the record it appears that Mr. Christian had actual authority to do so. The Appellate Conferee in *Johnson*, by the Service's own admission, had actual authority to terminate Appellate Division consideration. *See id.* at 644. There is nothing in this case to suggest that Mr. Christian had less authority than the Appellate Conferee in *Johnson*.

 Moreover, there is a presumption of regularity attached to the Service's actions; it is presumed, whenever an official has acted, that whatever is required to give validity to the official's act in fact exists.[5] *See United States v. Ahrens*, 530 F.2d 781, 786 (8th Cir. 1976); *Lesser v. United States*, 368 F.2d 306, 309 (2d Cir. 1966). In the present case, therefore, we presume, in the absence of any indication to the contrary, that Mr. Christian, by virtue of a delegation of authority, had actual authority to terminate the Appellate Division's consideration of this case.

---

**4.** Rev.Proc. 71–11 was recently superseded by Rev.Proc. 79–22, 1979–1 C.B. 563, which provides, in part:

> Written notification by the Service to the taxpayer of termination of Service consideration will be accomplished by issuance of Form 872–T, Notice of Termination of Special Consent to Extend Time to Assess Tax. . . . [M]ailing of a notice of deficiency will constitute written notification of termination of Service consideration in lieu of mailing Form 872–T.

**5.** The Service contends that, while the presumption of official regularity is available to the government whenever an official action is challenged, it is not available to a taxpayer who is attempting to establish that an official action has legal validity. We disagree. A presumption of this sort should work no hardship on the government, since the government is best able to rebut the presumption. In the interests of fairness, therefore, the presumption of regularity should operate to the benefit of the taxpayer as well as the government.

Finally, the Service argues that the letter in issue is not a notification of termination of Appellate Division consideration, since the St. Louis Appellate Division, of which Mr. Christian was a part, had a policy of never issuing such letters in unagreed cases. There are at least three problems with this argument, however. First, whether or not the St. Louis office had a policy in this regard is irrelevant. As the court pointed out in *Johnson*, internal statements of policy have never carried the force of law. While the office's policy can direct its agents in what to do, it cannot limit the effect of its agents' actions if they choose to ignore it.

Second, it is not at all clear that it can fairly be said that it is the Service's policy not to issue notices of termination in unagreed cases. *See Johnson v. Commissioner, supra* at 643. Revenue Procedure 71–11, which was in effect at the time Mr. Christian sent his October 18 letter to the taxpayer, states, among other things, that Form 872–A extends the period of limitations to a date 90 days after "mailing by the Internal Revenue Service of written notification to the taxpayer(s) of termination of Appellate Division consideration." Form 872–A contains an identical provision. Nothing in these provisions indicates that notices of termination will be issued only in agreed cases. On the contrary, such a provision is at least as crucial in unagreed cases since the taxpayer is entitled to expeditious issuance of the notice of deficiency. Additionally, paragraph 8233(13)(4) of the Internal Revenue Manual states clearly that "[n]otification by the Service of termination of Appellate consideration is issued in *all* Form 872–A cases except where notification of termination has been received from taxpayer." (Emphasis added.) Thus, published pronouncements of the Service's policy at the time Mr. Christian sent his letter to Mr. Crunican indi-

cated that the Service issued notices of termination of Appellate Division consideration in unagreed as well as agreed cases. The St. Louis office's internal, unpublished modifications of this policy, if any, cannot take precedence over published announcements to the contrary.

Third, if the letter in question is not that contemplated by Form 872–A and the Internal Revenue Manual, or if the Service does not send letters in unagreed cases, taxpayers who sign Form 872–A are being misled. The Commissioner's position in effect is that, the language of Form 872–A notwithstanding, in this and apparently in other unagreed cases, the statute of limitations never runs and the Service can send a notice of deficiency at any time. In the instant case, no other letter than that of October 18 was sent advising the taxpayer that Appellate Division consideration had terminated.[6] In other unagreed cases, apparently no letter is sent although the taxpayer is so advised orally.

To permit the Service to abrogate the application of Form 872–A and the provisions of the Internal Revenue Manual by sending a letter the clear import of which is that Appellate Division consideration has terminated but then avoid the consequences by contending that the letter does not unequivocally and positively so state when no other unequivocal letter is sent would sanction, condone and reward misrepresentation.

The fact of the matter is that all concerned understood the October 18 letter to be a notification that Appellate Division consideration had terminated. Thereafter, Mr. Christian and Mr. Crunican talked only about when the notice of deficiency would be received, presumably in December, since the case had been forwarded to the Regional Counsel on November 12 where it apparently got lost. On the 91st day, January 17, out of the blue, Mr. Christian, the Appellate

6. Judge Sprecher's dissent states, page 21, that the October 18 letter indicates that the issuance of the statutory notice of deficiency "would terminate Appellate Division consideration." No such statement appears in the letter in question. On the contrary, the clear import of

the letter is that, since the parties "have been unable to agree upon a mutually satisfactory basis for closing the case," no further consideration by the Appellate Division would be warranted and it is terminated.

Division conferee, called Mr. Crunican, the taxpayer's representative, purportedly to discuss a slightly different settlement proposal. The taxpayer's representatives declined on the ground the 90-day statute of limitations had run. On April 18, 1975, six months after the October 18 letter, the notice of deficiency was finally mailed.

In summary, we conclude that Mr. Christian's letter of October 18, 1974 constituted notification of termination of Appellate Division consideration. Pursuant to the taxpayer and the Service's agreement, the limitations period for assessing a deficiency expired 90 days after the mailing of this letter. Since no notice of deficiency was issued in this case before the expiration of the limitations period, the assessed deficiency is time barred. We, therefore, reverse the Tax Court.

Reversed.

SPRECHER, Circuit Judge, dissenting.

The issue on appeal is whether a certain letter written by an internal revenue appellate conferee constitutes the "written notification to the taxpayer of termination of Appellate Division consideration" sufficient to terminate waiver of the statute of limitations under Form 872–A.

1. 26 U.S.C. § 6501(c)(4) provides:
 Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon.

2. Internal Revenue Service received taxpayer's protest to the Appellate Division of June 28, 1973. Subsequently representatives of taxpayer and Appellate Conferees participated in two settlement conferences of June 19 and August 14, 1974.

3. Form 872–A provided that taxpayer and Assistant Regional Commissioner—Appellate consent and agree as follows:
 That the amount(s) of any Federal income tax due under any return(s) made by or on behalf of the above-named taxpayer(s) for the tax year(s) ended December 31, 1968 un-

I

Taxpayer's federal income tax return for the calendar year 1968 was filed on June 13, 1969. The three-year statute of limitations for assessing a deficiency would have expired on June 13, 1972. On four occasions between March 16, 1972 and April 17, 1974, taxpayer and the Internal Revenue Service timely agreed in writing to extensions of the statutory period pursuant to 26 U.S.C. § 6501(c)(4).[1] Each of these four extensions was evidenced by Internal Revenue Service Form 872 and each was for a time period ending on a specific date, the last such date being December 31, 1974.

On July 18, 1974, after taxpayer's case had been transferred to the Appellate Division of the Internal Revenue Service at St. Louis, Missouri,[2] taxpayer and Internal Revenue Service entered into an agreement evidenced by Form 872–A, entitled "Special Consent Fixing Period of Limitation Upon Assessment of Income Tax," which extended the assessment period until 90 days after written notification by either party of termination of the agreement.[3] Kenneth E. Christian, Appellate Conferee, signed Form 872–A on behalf of Fred J. Ochs, Assistant Regional Commissioner—Appellate.

der existing or prior revenue acts may be assessed at any time on or before the 90th day after (1) mailing by the Internal Revenue Service of written notification to the taxpayer(s) of termination of Appellate Division consideration, or (2) receipt by the Regional Appellate Division branch office considering the case of written notification from the taxpayer(s) of election to terminate this agreement, except that if in either event a statutory notice of deficiency in tax for any such year(s) is sent to the taxpayer(s), the running of the time for making any assessment shall be suspended for the period during which the making of an assessment is prohibited and for 60 days thereafter. If such statutory notice is sent to the taxpayer(s) and neither of the conditions enumerated (1) and (2) in the preceding sentence have occurred, the time for making such assessment will expire 60 days after the period during which the making of an assessment is prohibited. However, this agreement will not reduce the period of time otherwise provided by law for making such assessment.

At no time did taxpayer ever avail itself of its right to terminate the unlimited waiver of the statute of limitations represented by Form 872–A.

Kenneth E. Christian, Appellate Conferee, mailed the following letter to taxpayer under date of October 18, 1974:

Conferee Anna Jobson and I have carefully considered the evidence and arguments in support of your position as discussed during our two conferences with you and Mr. Neal Farrell, and as set forth in your protest and supplemental information, the latest of which accompanied your letter of August 29, 1974.

We regret that we have been unable to agree upon a mutually satisfactory basis for closing the case, although settlement proposals and counter-proposals were made and considered by the parties. Accordingly, this is to inform you that it is our intention to recommend issuance of a statutory notice of deficiency reflecting the adjustments proposed by the district Director.

Your cooperation has been very much appreciated.

Very truly yours,
Kenneth E. Christian,
Appellate Conferee

On January 17, 1975, Christian telephoned one of taxpayer's representatives and outlined a slightly different settlement proposal than the last one offered the taxpayer. Taxpayer's representative requested another conference, which was then arranged for January 22, 1975 in St. Louis. At the scheduled conference, attorneys for taxpayer appeared and stated that the statute of limitations had expired on January 16, 1975, 90 days after Christian had mailed the letter dated October 18, 1974.

The notice of deficiency required by statute was mailed by the Commissioner of

Internal Revenue to the taxpayer on April 18, 1975, in the amount of $6,316,749.57. Taxpayer filed its petition for redetermination with the Tax Court on July 10, 1975.

On October 23, 1975, taxpayer moved for summary judgment in the Tax Court on the ground that the statute of limitations had expired. Special Trial Judge Randolph F. Caldwell, Jr. denied the motion on April 2, 1976.

On April 30, 1976, taxpayer moved to vacate Judge Caldwell's order denying summary judgment. On May 13, 1976, Chief Judge Howard A. Dawson, Jr. of the Tax Court denied the motion to vacate.

On August 25, 1977, taxpayer moved in the Tax Court for reconsideration of its motion for summary judgment. On November 7, 1977, Judge Theodore Tannenwald, Jr. of the Tax Court denied the motion to reconsider.

On March 17, 1980, Judge Tannenwald of the Tax Court determined a deficiency of $4,316,132.06 against taxpayer. Taxpayer has appealed on the ground that the statute of limitations barred the deficiency.

## II

### A

The statute of limitations provides that income taxes shall be assessed within 3 years after the return is filed. 26 U.S.C. § 6501(a). Extensions of this period by agreement of the taxpayer and the Commissioner are provided for by § 6501(c)(4).[4]

Form 872–A, which has been called the "unlimited waiver" form, was initiated by Internal Revenue Service in February, 1971, mainly to relieve taxpayers and the Service from the irritations and difficulties of obtaining frequent renewals of limited period consents.[5]

---

**4.** See note 1.

**5.** Rev.Proc. 71–11, 1971–1 C.B. 678 provided as follows in Sec. 2.03:

In order to relieve taxpayers and the Service from the irritations and difficulties of obtaining renewal consents, to relieve the Service, in part, of the problems of maintaining con-

trols to ensure that the period of limitation does not expire during consideration of a case, and to provide a means of restricting the period of limitation to the minimum time required for Appellate Division consideration, Form 872–A is provided.

Earlier uses of waivers unlimited in time have been upheld so long as the taxpayer retained the right to terminate the suspension of the statute of limitations by giving notice to the Commissioner. In *Greylock Mills v. Commissioner of Internal Revenue*, 31 F.2d 655, 658 (2nd Cir. 1929), Judge Swan said: [6]

> If waivers which are in terms unlimited are to be limited at all, we think they should expire only after the taxpayer gives notice to the Commissioner that he will regard the waiver as at an end after a reasonable time, say three or four months, from the date of such notice. In such a rule there is no harshness to either party; on the contrary, it seems to us the most reasonable one.

The validity of the unlimited waiver provided by Form 872–A has been upheld against a taxpayer's attack that the open-ended nature of the form violated 26 U.S.C. § 6501(c)(4), which speaks of the "period so agreed upon." *McManus v. Commissioner of Internal Revenue*, 65 T.C. 197 (1975), affirmed, 583 F.2d 443 (9th Cir. 1978), *cert. denied*, 440 U.S. 959, 99 S.Ct. 1501, 59 L.Ed.2d 773 (1979). The Ninth Circuit said at 446:

> The statute requires an agreement between the taxpayer and the Commissioner; it does not require an agreement for a fixed period of time. If a fixed period is agreed to, it can be extended. The taxpayers could have cut the extension period to 90 days by sending a letter. They failed to do so. We fail to see any significant difference between not sending a letter here and granting a further extension.

It has also been held that the use of Form 872–A does not violate the due process or equal protection clauses of the Fifth Amendment. *Winn v. Commissioner of Internal Revenue*, 67 T.C. 499 (1976), affirmed, 595 F.2d 1060 (5th Cir. 1979).

### B

The sole issue to be resolved is whether the letter dated October 18, 1974 and signed by one of the Appellate Conferees, Kenneth E. Christian, constitutes the "written notification to the taxpayer of termination of Appellate Division consideration" required by Form 872–A to trigger the 90–day notice period.

The letter of October 18, 1974, does not state that it is a notification of the termination of Appellate Division consideration. It does not state that Appellate Division consideration is terminated. While it is true that it states "that it is our intention to recommend issuance of a statutory notice of deficiency" and that such *issuance* would terminate Appellate Division consideration, the words "intention to recommend" are lacking in finality by at least two steps—an intention is contingent in that it may be reconsidered by the person or persons so intending and a recommendation is contingent in that it may be disapproved by the person or persons to whom it is made.

The expression of a present intention to do some act does not bind one's future intention regarding that act. The word "intention" is included among "law words and phrases which are often used because they are flexible or despite their flexibility." Mellinkoff, *The Language of Law (1963)* at 21. "Recommend" means "to mention or introduce as being worthy of acceptance, use or trial." Webster's Third New International Dictionary (Unabridged, 1966).

The practice regularly followed by Internal Revenue Service both before and after October 18, 1974, mandates a clear requirement that written notifications of termination of Appellate Division consideration be explicit. Section 3.02 of Rev.Proc. 71–11 provided:

> Notification by the service to the taxpayer of termination of Appellate Division consideration will normally be accomplished by issuance of a form letter indicating the basis upon which consideration is terminated.

---

**6.** In *Big Four Oil & Gas Co. v. Heiner*, 57 F.2d 29, 31 (3rd Cir. 1932), after quoting Judge Swan in *Greylock Mills*, the court concluded that "[t]his rule seems reasonable . . . ."

In this case no form letter was issued and no basis was indicated upon which consideration was terminated. In fact the letter does not state that consideration was terminated but only that there existed a present intention to recommend an act which would have the implied effect of terminating consideration.

In agreed cases, Internal Revenue Service provided for the use of Form L–85. Internal Revenue Manual, par. 8233(13)(4).[7] In agreed cases considered by the Joint Committee on Internal Revenue Taxation, the Service provided for use of Pattern Letter P–265. Both Form L–85 and Pattern Letter P–265 contained the following language:

> This is your notice of termination of Appellate Division consideration referred to in consent Forms 872–A for tax years ended . . . .

From 1971 to 1979, in non-agreed cases the Service considered that the mailing of the statutory notice of deficiency constituted the written notification of termination of Appellate Division consideration. Internal Revenue Manual, par. 8233(13)(4).[8]

In 1979, Rev.Proc. 71–11 was superseded by Rev.Proc. 79–22, 1979–1 C.B. 563, which provides for the use of Form 872–T, which is entitled "Notice of Termination of Special Consent to Extend the Time to Assess Tax" and states expressly that "this form is written notification of termination of Form 872–A." [9]

There is nothing unfair nor unreasonable from the taxpayer's standpoint in requiring that written notification be explicit. The concept of suspending the statute of limitations during the pendency of settlement negotiation is designed for the benefit of the taxpayer as well as the government. In *United States v. Havner*, 101 F.2d 161, 163 (8th Cir. 1939), the court said:

> The taxpayer, in submitting such an offer and waiver, in effect requests the Government to withhold attempts to collect the tax while the offer is pending, and, in consideration of this forebearance on the part of the Government, consents to forego the benefit of having the statute of limitations run while his offer of settlement is pending.

See also, *United States v. Harris Trust & Savings Bank*, 390 F.2d 285, 288 (7th Cir. 1968).

In the present case the statutory notice of deficiency was in the amount of $6,316,-249.57 and the Tax Court determined the deficiency at $4,316,132.06. There existed a viable controversy in which settlement negotiations were prudent for both the taxpayer and the government.

### C

Nor did this particular taxpayer have any reasonable expectancy from which it was entitled to imply termination of the limitation waiver. Both parties agreed that settlement conferences at the appellate level occurred on June 19 and August 14, 1974.

---

**7.** Internal Revenue Manual, par. 8233(13)(4) provides:

> Notification by the Service of termination of Appellate consideration is issued in all Form 872–A cases except where notice of deficiency has been issued, or where notification of termination has been received from taxpayer. Provision is included for Service notification in closing letter Form L–85 used in agreed cases. See Exhibit 53 of IRM 8(24)60, Appellate Division Secretarial Handbook.

**8.** See note 7, supra.

**9.** Sec. 3.03 of Rev.Proc. 79–22 provides:

> Written notification by the Service to the taxpayer of termination of Service consideration will be accomplished by issuance of Form 872–T, Notice of Termination of Special Consent to Extend Time to Assess Tax. Form 872–A provides that 90 days will thereafter remain for assessment of tax. In this regard, mailing of a notice of deficiency will constitute written notification of termination of Service consideration in lieu of mailing Form 872–A. Receipt from the taxpayer(s) of Form 872–T by the Internal Revenue Service office considering the case will likewise start the running of the 90-day period for assessment.

> Sec. 4.02 provides:

> With the exception of the mailing of a notice of deficiency, written notification by the Service to the taxpayer(s) of termination of Service consideration can only be made using Form 872–T.

Both parties agreed that at both conferences settlement proposals and counter-proposals were discussed but no settlement agreement was reached. Crunican affidavit, second paragraph; Christian affidavit, third paragraph.[10] Christian's affidavit further stated that "[a] written settlement proposal was received from Borg-Warner Corporation on September 3, 1974," which statement was not controverted by taxpayer.[11]

The Internal Revenue Service regulation which applies to offers in compromise is 26 C.F.R. Sec. 301.7122–1 and it provides in part:[12]

> (f) *Requirement with respect to statute of limitations.* No offer in compromise shall be accepted unless the taxpayer waives the running of the statutory period of limitations on both or either assessment or collection of the tax liability involved for the period during which the offer is pending, or the period during which any installment remains unpaid, and for one year thereafter.

Crunican, taxpayer's representative in the settlement negotiations, was an Internal Revenue Agent from 1945 to 1957 and a Group Supervisor, Audit Division, from 1957 to 1961. He must have been well aware of the requirement that offers in compromise suspend the statute of limitations while they were pending plus one year. The statutory notice of deficiency was issued April 18, 1975, six months from the Christian letter of October 18, 1974. So even if Crunican erroneously interpreted the Christian letter as rejection of the September 3, 1974 settlement proposal by taxpayer and if this had been the usual offer and waiver situation, the suspension of the statute of limitations would not have expired until October 18, 1975. Crunican could have had no reasonable expectation of early termination of the limitations suspension.

Crunican, as a former revenue agent and supervisor, would also recognize that a letter signed by an Appellate Conferee stating that "it is our intention [that is, the intention of Christian and his Co-Conferee Anna Jobson] to recommend issuance of a statutory notice of deficiency . . . ." required some action by the conferees' supervisor. Crunican was also on notice that the Form 872–A was executed in the name of the Assistant Regional Commissioner—Appellate. Thus until some time later than October 18, 1974, there remained an opportunity to negotiate a settlement. In fact, further settlement proposals were made by Christian on January 17, 1975 and on behalf of the taxpayer on February 20, 1975. Therefore it was impossible for the October 18, 1974 letter to be a written notification of termination of Appellate Division consideration inasmuch as termination had not occurred by that time.

A mere recommendation from a revenue agent to his supervisor does not trigger any critical factors in the relation between government and a taxpayer. The Supreme Court in *Donaldson v. United States*, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) held that an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a *recommendation* for criminal prosecution. In *United States v. LaSalle National Bank*, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Court clarified *Donaldson* as not referring to the recommendation by the agent to his supervisor but to the recommendation by Internal Revenue Service to the Department of Justice. The Court not-

---

**10.** Christian's letter to taxpayer dated October 18, 1974, referred to the parties' inability to agree "although settlement proposals and counter-proposals were made and considered by the parties."

**11.** The record does not reveal the dates of any other written settlement proposals made by taxpayer.

**12.** The requirement of suspension of the statute of limitations while an offer in compromise is pending plus one year is in the present regulation (26 C.F.R., Part 301, § 301.7122(f)); was in effect as far back as 1960 (see *United States v. Harris Trust & Savings Bank*, 390 F.2d 285 (7th Cir. 1968)); and was utilized as early as 1935 (see *United States v. Havner*, 101 F.2d 161, 162 (8th Cir. 1939)).

ed that any other interpretation "would unnecessarily hamstring the performance of the tax determination and collection functions by the Service." 437 U.S. at 313, n.15, 98 S.ct. at 2365, n.15. Similarly here, if a letter intended for a different purpose entirely [13] was held to *imply* the foreclosure of the government to collect from four to six million dollars of taxes, tax functions would be hamstrung as agents spent their time composing exactly the proper language. It is preferable to draw a bright line requiring that written notifications of termination explicitly state that fact.

Taxpayer relied heavily on *Johnson v. Commissioner of Internal Revenue*, 68 T.C. 637 (1977), where the Tax Court held in two consolidated cases that an Appellate Conferee's two letters—one saying "a statutory notice of deficiency will be sent to you" and the other, "a statutory notice of deficiency will be issued at an early date"—constituted a written notification of termination under Form 872–A. *Johnson* does not affect our conclusion for several reasons.

In the first place, a footnote in the *Johnson* opinion refers to the present case as "clearly distinguishable." 68 T.C. at 645, n.1. Secondly, the issue in this case was passed upon by three different Tax Court judges on three separate occasions and they all reached a conclusion different than the one reached in *Johnson*. · One of the three was Tax Court Judge Dawson who was the author of *Johnson*. Thirdly, *Johnson* is clearly distinguishable in that the language here ("it is our intention to recommend issuance of a statutory notice of deficiency") lacks the finality found in *Johnson's* language ("a statutory notice of deficiency will be sent [or issued]"). Finally, we believe that *Johnson* is in any event incorrect in permitting an implied as opposed to an explicit notice of termination.

I would affirm the judgment of the Tax Court.

**13.** Internal Revenue Manual, par. 8293 provides:

 If, in consideration of a case, it is concluded that a statutory notice of deficiency is to be issued, the taxpayer or his representative will be advised of this conclusion in advance of the mailing of the statutory notice. Such advice need not be in written form unless circumstances warrant such written advice.