JOSEPH M. RAULT, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RAULT PETROLEUM CORPORATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Rault v. Commissioner
Docket Nos. 5901-77, 5905-77.
United States Tax Court
T.C. Memo 1982-283; 1982 Tax Ct. Memo LEXIS 457; 43 T.C.M. (CCH) 1446; T.C.M. (RIA) 82283; May 24, 1982. *457 After petitioners had signed numerous Forms 872 extending the statute of limitations, petitioners executed Forms 872-A extending the statute until 90 days after a written notification of termination of the consent to the extension was received by respondent from petitioners. By letter dated October 28, 1975, petitioners' counsel indicated to an Appeals Officer of the Internal Revenue Service that due to the impasse reached by the parties in the Appellate Division of the Internal Revenue Service he was requesting the issuance of notices of deficiency. Held: The letter of October 28, 1975, contained sufficient elements of notice so as to constitute a termination of petitioners' consent to extend the statute of limitations. Accordingly, respondent's issuance of notices of deficiency on March 15, 1977, was untimely and assessment of deficiencies and additions to tax are therefore barred by the statute of limitations. D. I. Couvillion, for the petitioners. William A. Neilson, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: In these consolidated cases respondent determined deficiencies and additions to the Federal income taxes of petitioners as follows: *458 Additions to Tax
Petitioner
Docket No.
Year
Deficiency
Section 6653(a)
Joseph M. Rault, Jr.
5901-77
12/31/64
$ 7,268.94
$ 363.44
12/31/66
19,343.85
967.19
12/31/67
2,916.13
145.81
12/31/68
4,317.28
215.86
Rault Petroleum
5905-77
9/30/66
55,177.73
2,758.89
Corporation
9/30/67
7,642.37
382.12
9/30/69
7,060.13
353.01
Although numerous issues are in dispute, pursuant to the granting of petitioners' Motions for Severance and Separation of Issues for Trial, the sole issue currently presented for our determination is whether the asserted deficiencies and additions to tax are barred by the statute of limitations. OPINION The facts have been fully stipulated and are found accordingly. Petitioner, Joseph M. Rault, Jr. was a resident of New Orleans, Louisiana, at the time of the filing of the petition in this case. Timely individual income tax returns were filed by petitioner for each of the years in issue. Petitioner, Rault Petroleum Corporation, is a Louisiana Corporation which had its principal place of business in New Orleans, Louisiana, at the time of the filing of the petition in this case. For the years ending September 30, 1966, and September 30, 1967, the corporation filed its corporate income tax return with the *459 District Director of Internal Revenue, New Orleans, Louisiana. For the year ending September 30, 1969, the corporate income tax return was filed with the Internal Revenue Service Center, Austin, Texas. During the years 1962 through 1968 Joseph M. Rault, Jr. and Claire V. Rault were married. For all of these years, except 1963, the Raults filed separate returns. In 1963 a joint return was filed. During the course of the audit of petitioner Joseph M. Rault, Jr.'s 1964 income tax return it became necessary to extend the statute of limitations for assessment of income taxes. To this end, on September 18, 1967, Joseph M. Rault and the District Director of Internal Revenue, New Orleans, Louisiana, executed Form 872 (Consent Fixing Period of Limitation Upon Assessment of Income and Profits Tax) and thereby agreed to extend the statute of limitations with respect to the taxable year 1964 until December 31, 1968. As the audit continued, additional extensions of the statute were required. Consequently, eight more consent forms respecting the taxable year 1964 were filed by the parties. The last form extended the statute of limitations for assessment of income taxes until December 31, *460 1974. A similar procedure was followed respecting the audit of Joseph M. Rault, Jr.'s 1966, 1967 and 1968 income tax returns wherein numerous Forms 872 were executed by the petitioner and the District Director. Finally, in September of 1974, while the returns were in the province of an Appellate Conferee of the Internal Revenue Service the parties executed a Form 872-A (Special Consent Fixing Period of Limitation Upon Assessment of Income Tax), thus extending the period for assessment to any time on or before the 90th day after either the mailing by the Internal Revenue Service of written notification to the taxpayer of termination of Appellate Division consideration or receipt by the Regional Appellate Division branch office of written notification from the taxpayer of election to terminate the agreement. Where a notice of deficiency is issued the 90-day period for assessment cited in Form 872-A is subject to the suspension of the running of the period of limitation provided by section 6503 (a)(1). [1] *461 Concurrent with the audit of petitioner Joseph M. Rault, Jr.'s individual income tax returns was an audit of the corporate income tax returns of the Rault Petroleum Corporation for the years ended September 30, 1964 through September 30, 1969. Joseph M. Rault, Jr., as president of the corporation, and the District Director of Internal Revenue, by his agent, executed a myriad of Forms 872 so as to extend the statute of limitations up through December 31, 1974. Following the exact routine described *462 above relative to the individual petitioner herein, in September of 1974 the corporation by its president and an Appellate Conferee of the Internal Revenue Service signed Form 872-A, providing for a special consent fixing the period of limitation upon assessment of income tax. Additionally, the individual income tax returns of Mrs. Claire V. Rault for the taxable years 1962 and 1964 through 1968 were audited by the Internal Revenue Service. Pursuant to audit reports dated October 30, 1972, the District Director at New Orleans issued proposed deficiencies with respect to the following taxpayers for the following taxable years: Joseph M. Rault, Jr.
1962, 1964-1968
Joseph M. Rault and Claire V. Rault
1963
Mrs. Claire V. Rault
1962, 1964-1968
Rault Petroleum Corporation
9/30/63 - 9/30/69
Joseph M. Rault, Jr., Inc.
2/28/63 - 2/28/69 As president of both Joseph M. Rault Jr., Inc. and Rault Petroleum Corporation, on August 6, 1973, Joseph M. Rault, Jr. filed protests against the proposed deficiencies respecting the corporations. The law firm of Jones, Walker, Waechter, Poitevent, Carrere and Denegre of New Orleans commenced its representation before the Internal Revenue Service of the above referenced *463 individuals and corporations on or about August 21, 1974. On August 22, 1974, the above-noted attorneys filed protests against proposed deficiencies on behalf of the individual taxpayers they represented and supplemented protests already filed on behalf of the corporate taxpayers noted. After conferences were conducted between an Internal Revenue Appeals Officer and petitioners' counsel on August 29, 1974, and November 7, 1974, and after various information was received from petitioners' counsel by the Appeals Officer, a proposed settlement was submitted by petitioners' counsel to the Internal Revenue Service on December 17, 1974. On April 14, 1975, the Appeals Officer communicated to petitioners' counsel the Internal Revenue Service's rejection of the settlement offer. Petitioners' counsel then requested and received an appointment for another appellate conference which was scheduled for April 25, 1975. After two postponements, an additional conference took place on May 28, 1975, at which petitioners' counsel promised to submit additional information to the Appeals Officer within 2 weeks. Such information was forwarded to the appellate level of the Internal Revenue Service on *464 June 10, 1975. Several months then passed before the Appellate Officer who was working on the case herein could divert his attention away from his other assignments. In the interim, on June 24, 1975, Forms 870 for Joseph M. Rault, Jr., Inc.'s fiscal years ending February 28, 1963, and February 28,1964, were executed by petitioners' counsel. The Appeals Office thereafter closed the Joseph M. Rault Jr., Inc. case. On September 26, 1975, petitioners' counsel and the Appeals Officer set October 17, 1975, as the date for an Appellate conference. Two days prior to the planned appointment the conference was rescheduled for October 28, 1975. On October 28, 1975, counsel for petitioners called the Appeals Officer and asked whether a counterproposal was to be forthcoming from the government at the conference. The Appeals Officer stated that after thoroughly studying every facet of the 26 issues in the cases he had concluded that the parties were too far apart for a meaningful counterproposal to be made. Accordingly, the conference scheduled for this date was not conducted. By letter dated October 28, 1975, petitioners' counsel informed the Appeals Officer that since an impasse had been *465 reached by the parties the Internal Revenue Service should proceed with its issuance of the statutory notice of deficiency. The full text of the letter follows: October 28, 1975 Mr. J. M. Pilie' Internal Revenue Service Appellate Division 600 South Street Room 444 New Orleans, Louisiana 70130 RE: JOSEPH M. RAULT, JR., ET AL
Dear Mr. Pilie': Bob Casey advised me this morning that you had telephoned him with respect to the conference which we had understood was scheduled this morning. It was our understanding that you would submit to us a written counter-proposal to the settlement proposal we made on December 17, 1974. You will recall that on several occasions you telephoned us before we had made our settlement proposal suggesting that it would be in the interest of the taxpayers to submit the proposal promptly.After our proposal was submitted, you delayed scheduling a conference until late May of 1975. At that conference, you indicated that you would prepare a counter-proposal which would be forwarded to us very promptly. I am disturbed to learn after a lapse of almost a year since our proposal was made, you advised Bob this morning that there was nothing to be gained in attempting *466 to compromise our position and yours because we were too far apart. It seems to me that it was not in the interest of the taxpayers for you to leave this matter open for almost a year and then to inform us that there was no possibility of settling the case at the Appellate Division. Based on your conversation this morning, we see no alternative but to request that you go forward with issuing the statutory deficiency notice. I again confirm to you Bob Casey's comments on the telephone that our settlement proposal was made only for the purpose of settling the case at the Appellate Division. Now that the case has progressed beyond the Appellate Division, our previous settlement proposal is hereby withdrawn in its entirety. With best regards, I am Sincerely, Thomas C. Keller The above correspondence was received by the Internal Revenue Service on October 29, 1975, and was noted on the Appeals Officer's control card respecting the instant case. No further contact was had between petitioners' counsel and the Internal Revenue Service until the issuance of notices of deficiency on March 15, 1977. By letter dated October 28, 1975, petitioners' counsel advised their client, Mrs. Claire *467 V. Rames (the former Mrs. Claire V. Rault remarried Mr. Stanley P. Rames), that a statutory notice of deficiency in regard to her case would be mailed to her by respondent. Mrs. Rames then sought other counsel to represent her before the Internal Revenue Service. On November 7, 1975, Paul Simon, Esquire, informed the Appeals Officer that he was representing Mrs. Rames. Mrs. Simon submitted a Power of Attorney to the Appeals Officer on November 11, 1975, in reference to Mrs. Rames' (Mrs. Claire V. Rault) tax liability for the years 1962 through 1968. At a conference attended by the Appeals Officer and Mr. Simon held on December 4, 1975, an agreement was reached respecting Mrs. Rames' tax liability for the above referenced years. On March 15, 1977, respondent mailed statutory notices of deficiency to Joseph M. Rault Jr. for the taxable years 1964, 1966, 1967 and 1968 and to Rault Petroleum Corporation for its fiscal years ending September 30, 1966, September 30, 1967, and September 30, 1969. Section 6501(a) [2] *468 sets forth the general rule that taxes shall be assessed within 3 years after a return is filed. The relevant exception to this rule is embodied in section 6501(c)(4): (c) Exceptions.-- (4) Extension by agreement.--Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary or his delegate and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. See also section 301.6501(c)-1(d), Procedure and Administration Regulations. Indefinite *469 extension of the statute of limitations which either party may terminate upon proper notification have been sanctioned by this Court. Winn v. Commissioner,67 T.C. 499, 507-509 (1976), modified on other grounds 595 F.2d 1060 (5th Cir. 1979); McManus v. Commissioner,65 T.C. 197 (1975), affd. 583 F.2d 443 (9th Cir. 1978). In order to facilitate the execution of the extension of the statute of limitations, the Internal Revenue Service has prepared two forms. Form 872 provides for an extension of time for a fixed, predetermined period. The Appellate Division of the Internal Revenue Service utilizes Form 872-A which permits the parties to extend the statute of limitations for an indefinite period. See Rev. Proc. 71-11, 1971-1 C.B. 678. [3] The means by which the period may be terminated are unequivocally stated on Form 872-A as follows: * * * (1) mailing by the Internal Revenue Service of written notification to the taxpayer(s) of termination of Appellate Division consideration, or (2) receipt *470 by the Regional Appellate Division branch office considering the case of written notification from the taxpayer(s) of election to terminate this agreement, except that if in either event a statutory notice of deficiency in tax for any such year(s) is sent to the taxpayer(s), the running of the time for making any assessment shall be suspended for the period during which the making of an assessment is prohibited and for 60 days thereafter. If such statutory notice is sent to the taxpayer(s) and neither of the conditions enumerated (1) and (2) in the preceding sentence have occurred, the time for making such assessment will expire 60 days after the period during which the making of an assessment is prohibited. However, this agreement will not reduce the period of time otherwise provided by law for making such assessment. The instant dispute focuses on the significance of the letter of October 28, 1975, sent by petitioners' counsel to an Appellate Officer of the Internal Revenue Service which conveyed petitioners' request that respondent issue its statutory notices of deficiency. The entire text of the letter was set out earlier in this opinion. Petitioners vigorously argue that the *471 plain meaning to be extracted from the correspondence is that petitioners terminated their consents to extensions of the statute of limitations. Respondent argues that nowhere in the letter have petitioners terminated the effectiveness of their Forms 872-A, but rather a request for issuance of statutory notices is all that may be ascribed to the correspondence. [4] The parties offer opposing arguments as to who bears the burden of proof on this issue. When the taxpayer makes a prima facie case alleging that assessment is barred by the statute of limitations and proving the filing date of the return, the Commissioner must go forward with countervailing evidence to show that for some reason the period of limitations had not expired when he issued the statutory notice of deficiency. The taxpayer's burden may be discharged by introduction of the returns in issue. Robinson v. Commissioner,57 T.C. 735 (1972); T.W. Warner Co. v. Commissioner,19 B.T.A. 872 (1930); *472 Farmers Feed Co. v. Commissioner,10 B.T.A. 1069 (1928). [5] The Commissioner's burden of going forward with proof may be satisfied by introducing into evidence a consent, valid on its face, which extends the period of limitation so that the mailing of the statutory notice of deficiency was timely. Concrete Engineering Co. v. Commissioner,19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932). [6]
Where the Commissioner has introduced a consent, valid on its face, and the taxpayer asserts that such consent was ineffective, then it is the taxpayer who is required to affirmatively show the invalidity thereof. Crown Williamette Paper Co. v. McLaughlin [36-1 USTC P9078], 81 F.2d 365 (9th Cir. 1936); Concrete Engineering Co. v. Commissioner, supra. While the cited authorities deal with instances where taxpayers' claims were focused on the invalidity of the consent forms, we believe the rule has equal force where valid consents to the extension of the statute of limitations are claimed to have been terminated. Accordingly, the burden of proof rests with petitioners *473 to show that they effected terminations of their validly executed consents. For reasons apparent from our ensuing discussion, we hold that petitioners have adequately borne their burdens of proof respecting proper terminations of their consents to the extension of the periods of limitation. Since the parties agreed on Forms 872-A that the consents could be terminated by the written notification of a party to the agreement and because the parties are left to their own ingenuity for giving such written notification, our task is to decide whether petitioners' counsel's letter of October 28, 1975, constituted a written notification of termination. If the correspondence in issue contains sufficient elements of notice, then it will be deemed a proper notification of termination. Johnson v. Commissioner [Dec. 34,543], 68 T. C. 637 (1977). [7] In Johnson each taxpayer had executed a Form 872-A. After settlement negotiations had reached an impasse an Appellate Conferee of the Internal Revenue Service sent the following letter to one set of taxpayers: We have considered the protest, evidence and arguments *474 you submitted to support your position regarding the tax identified above. Since we were unable to reach a satisfactory agreement in your case, a statutory notice of deficiency will be sent to you. If you desire to contest this matter further without first paying the tax, you may, after receiving the notice, file a petition with the United States Tax Court for a redetermination of your tax liability. [at 640.] No further relevant communication was effected between the parties prior to the issuance of the notice of deficiency which occurred more than 90 days after the above correspondence was mailed. Similar circumstances attended the liability of other taxpayers in that case. To these latter taxpayers, the Appellate Conferee sent the following message: Inasmuch as no mutually satisfactor basis of settlement has been reached concerning your income tax liability for the year 1965, a statutory notice of deficiency will be issued at an early date. [at 640.] In holding that assessment of the taxpayers' taxes was barred by the statute of limitations, we noted that each letter issued by the Appellate Conferee constituted sufficient notice to the respective taxpayers that the Appellate *475 Division of the Internal Revenue Service had ceased to consider their case for settlement. In particular, we recognized the aura of finality present in the letters as gleaned from the vacabulary and the verb tense used in the letters and the circumstances surrounding their transmittal. In the instant case, we similarly accord the element of finality to the letter of October 28, 1975, issued by petitioners' counsel to the Appellate Officer. The facts reveal that after two appellate conferences were conducted petitioners' settlement proposal was rejected by the Appeals Officer on April 14, 1975. Petitioners' counsel then requested another conference which, after two postponements, was held on May 28, 1975. After the submission by petitioners' counsel of additional information in the ensuing weeks, the parties ultimately agreed to October 28, 1975, as the date for yet another conference. On that date petitioners' counsel telephoned the Appeals Officer so as to inquire whether a counterproposal was forthcoming from the Government at the conference. The Appeals Officer stated that after thoroughly reviewing every facet of the case he had concluded that the parties were too far apart *476 for a counter-proposal to be made. The conference set for that date was never conducted and petitioners' counsel, on that very day, sent the letter which provides the basis for the instant dispute. Thus, it is evident that circumstances leading up to the issuance of the letter plainly reveal that an impasse had been reached in the parties' negotiations. An analysis of the October 28 letter leads to the inevitable conclusion that petitioners considered appellate review of their case as terminated. There can be no mistaking the element of finality to be extracted from the letter as evidenced by the following language: Based on your conversation this morning, we see no alternative but to request that you go forward with issuing the statutory deficiency notice. I again confirm to you Bob Casey's comments on the telephone that our settlement proposal was made only for the purpose of settling the case at the Appellate Division. Now that the case has progressed beyond the Appellate Division, our previous settlement proposal is hereby withdrawn in its entirety. Thus petitioners' counsel plaintly stated that any hope of settlement had been quashed and the only procedure to be pursued was *477 the issuance of notices of deficiency by respondent. Based on this analysis, we hold that petitioners' counsel's letter of October 28 contained sufficient elements of notice to respondent such that the correspondence constituted written notification of termination of their consents to extend the statute of limitations. Respondent contends that Johnson is distinguishable from the instant case in that in Johnson it was the government which was found to have terminated their consents by issuance of letters to taxpayers detailing the impasse reached by the parties. Respondent argues that where, as in the case at bar, a written notification issued forth from the taxpayer merely reciting that no agreement has been reached and that the Commissioner should proceed with issuing the statutory notice of deficiency, such a notification does not amount to a termination. While respondent urges a stricter procedure for the taxpayer to effect a termination than that applied to respondent in Johnson, respondent cites no authority for the countenance of such a rule. Moreover, an agreement by the taxpayer and the Commissioner to an extension of the statute of limitations serves to enable the respondent *478 to more carefully investigate some phases of the taxpayer's tax liability and the allowance of additional time should be in the best interests of both parties. Cary v. Commissioner,48 T.C. 754, 763 (1967). Thus, the mutual benefit derived by both parties seems more consonant with a rule which provides identical means for terminating the consent of either party. Furthermore, while we are aware that Form 872-A allows the respondent adequate time to prepare a precise notice of deficiency, we are equally cognizant that respondent would always be equipped with the potential use of the notice of deficiency should a taxpayer withdraw or revoke a valid consent. Thus, without being guided to persuasive reasoning or without any apparent justification, we are unwilling to establish stricter guidelines for effecting a termination by the taxpayer than those enunciated in Johnson respecting a termination by the Commissioner. Respondent, citing Ventura Consolidated Oil Fields v. Rogan,86 F.2d 149 (9th Cir. 1936), cert. denied 300 U.S. 672 (1937), asserts that any ambiguity in the October 28, 1975, correspondence issued by petitioners' counsel must be construed against its draftsman. As noted *479 earlier, however, we believe that the correspondence contained sufficient elements of notice so as to vitiate any argument focused on the ambiguity of the document. Finally, respondent maintains that any possibility that the Appellate Division knew or should have known that the October 28 letter was a termination of petitioners' consent is eliminated by virtue of the fact that Mrs. Rames (formerly Mrs. Claire V. Rault), who was named in the letter, continued negotiations and subsequently settled her case with the Appeals Officer. However, in view of the Appeals Officer's receipt on November 11, 1975, of a Power of Attorney from Mr. Paul Simon, Esquire, it is evident that respondent was on notice that Mrs. Rames sought substitute counsel and that any negotiations between Mrs. Rames and the Appellate Division after that date had absolutely no effect on petitioners herein. Moreover, as a result of Mrs. Rames' receipt of a letter from her former counsel indicating that a notice of deficiency would be issued to her, we would be more apt to think that Mrs. Rames was so unnerved by the tone of finality accorded to negotiations between her former counsel and the Appellate Division that *480 she sought substitute counsel to resolve her tax case. Whatever her exact motivations were, we feel that, in any event, Mrs. Rames' settlement with the Appellate Division could not have been reasonably construed by respondent as having any effect on petitioners herein. Furthermore, we note that after respondent's receipt of the letter from petitioners' counsel of October 28, 1975, there was no contact between petitioners' counsel and the Internal Revenue Service until the issuance of the notices of deficiency. It therefore appears that respondent viewed the letter of October 28 was dashing any hopes of settlement between the parties. In light of the foregoing, respondent's issuance of the notices of deficiency on March 15, 1977, was untimely and accordingly assessment of the deficiencies and additions to tax herein are barred by the statute of limitations. Decisions will be entered for the petitioners.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended. Section 6503(a)(1) provides: (a) Issuance of Statutory Notice of Deficiency.-- (1) General rule.--The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or the collection by levy or a proceeding in court, in respect of any deficiency as defined in section 6211 (relating to income, estate, gift and chapter 42 taxes), shall (after the mailing of a notice under section 6212(a)) be suspended for the period during which the Secretary or his delegate is prohibited from making the assessment or from collecting by levy or a proceeding in court (and in any event, if a proceeding in respect of the deficiency is placed on the docket of the Tax Court, until the decision of the Tax Court becomes final), and for 60 days thereafter.↩
2. Section 6501(a) provides: (a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) or, if the tax is payable by stamp, at any time after such tax became due and before the expiration of 3 years after the date on which any part of such tax was paid, and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.↩
3. Rev. Proc. 71-11 was in effect for the year in which Forms 872-A were executed by petitioners. Subsequently Rev. Proc. 71-11 was superseded by Rev. Proc. 79-22, 1979-1 C.B. 563↩. See infra, n.4.
4. We note that in Rev. Proc. 79-22, 1979-1 C.B. 563↩, not in effect for the years in issue, the Internal Revenue Service has issued its position that the taxpayer and the Service may terminate the consent effected by Form 872-A only by use of Form 872-T.
5. See Schenk v. Commissioner,T.C. Memo. 1976-363 and Robertson v. Commissioner,T.C. Memo. 1973-205↩. 6. See cases cited in n. 5, supra.↩
7. See also Borg-Warner Corp. v. Commissioner [81-2 P9684], 660 F.2d 324↩ (7th Cir. 1981).