RICHARD P. VALK AND HELEN A. VALK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Valk v. Commissioner
Docket No. 22745-81.
United States Tax Court
T.C. Memo 1984-622; 1984 Tax Ct. Memo LEXIS 52; 49 T.C.M. (CCH) 203; T.C.M. (RIA) 84622; November 29, 1984. Elliott K. Braverman and Peter J. Boyer, for the petitioners. David E. Gaston and Alan E. Cobb, for the respondent. FEATHERSTON MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $104,352 in petitioners' Federal income tax for 1976. The parties agree that there is a deficiency in *53 the amount of $70,548 in petitioners' 1976 Federal income tax if the notice of deficiency was timely mailed. The sole issue to be decided is whether assessment of the determined deficiency is barred by the 3-year limitations period prescribed by section 6501(a). [1]
FINDINGS OF FACT Petitioners were legal residents of Carlisle, Pennsylvania, when they filed their petition. They filed their joint Federal income tax return for 1976 on or before April 15, 1977. On their 1976 joint Federal income tax return, petitioners claimed, among other items, a deduction in the amount of $195,101 for a loss from a partnership, Demy Associates. Petitioners' return was selected by the Internal Revenue Service for audit, and the examination was limited to the claimed partnership loss. The examining agent requested that petitioners' return be placed in suspense to await the results of the examination of the partnership return which would reflect the amount of the loss deduction to which petitioners *54 were entitled, and this was done. On January 31, 1980, the Philadelphia District Director wrote petitioners a letter stating that the period during which the law would permit assessment of any tax due for 1976 would soon expire, and asking them to execute a Form 872-A, Special Consent to Extend the Time to Assess Tax, for 1976. Petitioners executed Form 872-A and mailed it back to the Philadelphia District Director who received it on February 20, 1980. The Form 872-A signed by petitioners contained the following: Richard P. and Helen A. Valk taxpayer(s) of RD #7, Carlisle, Pennsylvania 17013 and the District Director of Internal Revenue or Regional Director of Appeals consent and agree as follows: (1) The amount(s) any Federal income tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1976 may be assessed on or before the 90th (ninetieth) day after: (a) the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, from the taxpayer(s); or (b) the Internal Revenue Service mails Form 872-T to the taxpayer(s); or (c) the Internal *55 Revenue Service mails a notice of deficiency for such period(s). However, if a notice of deficiency is sent to the taxpayer(s), the time for assessing the tax for the period(s) stated in the notice of deficiency will be further extended by the number of days the assessment was previously prohibited, plus 60 days. * * * On November 14, 1980, the District Director sent a letter to petitioners stating that their 1976 return was being examined and that the examination concerned one or more partnerships in which they had an interest, and requesting them to call J. Casale, an Internal Revenue Service auditor in the Philadelphia District Director's officer within 7 days. On November 20, 1980, one of the petitioners responded to the request and stated that they would exercise their "appeal rights." Under date of December 9, 1980, Elliot K. Braverman (Braverman) mailed a power of attorney to J. Casale of the Philadelphia District Director's office in which Braverman and Herman Gross, C.P.A., were authorized to represent petitioners before the Internal Revenue Service with respect to any proposed tax liability for 1976. Braverman is primarily a tax attorney. He has handled *56 many cases in which taxpayers have executed Forms 872-A, and he is familiar with the instructions for handling the form. After having been advised by Braverman, petitioners decided to terminate the Form 872-A consent agreement. Braverman, whose office is in Philadelphia, discussed the matter with petitioners by telephone, prepared a Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax, for the purpose of terminating the Form 872-A agreement, and mailed the Form 872-T to petitioners in Carlisle, Pennsylvania. Braverman did not prepare an envelope for transmittal of the form to the Internal Revenue Service. Nor did he give petitioners any instructions concerning where the form was to be mailed. Petitioners signed the Form 872-T and, on January 15, 1981, mailed it by certified mail addressed to the "Internal Revenue Service, Philadelphia, Pennsylvania 19255." Zip Code 19255 is that of the Internal Revenue Service Center, Philadelphia, Pennsylvania. The Form 872-T was not received by the Philadelphia District Director's office and was never made part of the administrative file on petitioners' case. In April 1981, unaware that petitioners *57 had mailed the Form 872-T to the Philadelphia Internal Revenue Service Center, the Philadelphia District Director's office sent Braverman a 30-day letter giving petitioners 30 days within which to protest a proposed deficiency for 1976. On May 28, 1981, in response to the 30-day letter, Braverman sent to the Philadelphia District Director's office a copy of the Form 872-T that petitioners had mailed to the Philadelphia Service Center for the purpose of terminating the agreement. The body of the Form 872-T states: Under the agreement dated February 18, 1980, between the above taxpayer(s) and the Internal Revenue Service, this form is written notification of termination of Form 872-A, Special Consent to Extend the Time to Assess Tax, for the kind of tax and tax period(s) indicated above. The form refers to 1976 as the tax period covered by it. The form also states: "Signature and mailing instructions are on the back of this form." The reverse side of the Form 872-T, headed "Instructions," contains 11 paragraphs, including the following: This notice may be made by either the taxpayer(s) or the Internal Revenue Service. * * * If the tax return(s) to which this notice *58 applies is under consideration by the Examination Division, mail this notice to the District Director of Internal Revenue having jurisdiction over the return(s), Attention: Chief, Examination Division. * * * If the tax return(s) to which this notice applies is under consideration by Appeals, mail this notice to the Chief, Appeals Office, having jurisdiction over the return(s). On July 10, 1981, within 90 days of the date on which the District Director's office received the copy of the Form 872-T from Braverman, the notice of deficiency was mailed. Petitioners agree that there is a deficiency for 1976 in the amount of $70,548 if assessment thereof is not barred by the statute of limitations. OPINION Section 6501(a) prescribes the general rule that a deficiency in income tax shall be assessed within 3 years after a return is filed. One exception to this general rule permits the Secretary or his delegate and the taxpayer to agree on the terms of an extension of the limitations period for assessments as follows: SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION. (c) Exceptions.-- (4) Extension by agreement.--Where, before the expiration of the time prescribed *59 in this section for the assessment of any tax imposed by this title, except the estate tax provided in chapter 11, both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon. The period so agreed upon may be extended by subsequent agreements in writing made before the expiration of the period previously agreed upon. Indefinite extensions of the statute of limitations on assessments under this section, which either party may terminate upon proper notification, have been sanctioned by this Court. Winn v. Commissioner,67 T.C. 499, 507-509 (1976), affd. in part and revd. in part 595 F.2d 1060 (5th Cir. 1979); McManus v. Commissioner,65 T.C. 197, 207-208 (1975), affd. 583 F.2d 443 (9th Cir. 1978). Section 6501(c)(4), however, "refers only to time, and leaves the parties free to decide for themselves the terms on which an extension will be granted." Pursell v. Commissioner,38 T.C. 263, 278 (1962), affd. per curiam, 315 F.2d 629 (3d Cir. 1963). Under the terms *60 of the Form 872-A agreement executed by petitioners, the extension of the limitations period could be terminated by petitioners to permit assessments on or before the 90th day after "the Internal Revenue Service office considering the case receives Form 872-T, Notice of Termination of Special Consent to Extend the Time to Assess Tax." Petitioners mailed their Form 872-T to the Internal Revenue Service Center, not the office of the District Director which was considering their case. The evidence is undisputed that the District Director's office did not receive the original Form 872-T signed and mailed by petitioners on January 15, 1981. Because petitioners mailed the Form 872-T to the Service Center, the form never came to the attention of the Internal Revenue Service officials in the District Director's office who actually had responsibility for auditing petitioners' return and preparing a notice of deficiency. Not until Braverman supplied the District Director's office with a copy of the form did those officials become aware of petitioners' earlier efforts to terminate the extension agreement. Within 90 days of receipt of the copy of the Form 872-T, the District Director's *61 office mailed the notice of deficiency to petitioners. We think the notice was timely. Petitioners first argue that their 1976 return was not "under examination" when they mailed the Form 872-T and, therefore, the instructions on the form were not applicable. This argument is specious. The testimony shows that the examining agent had decided to make no adjustments in the return as filed except with respect to the tax shelter issue raised by the reported Demy Associates partnership loss. Petitioners' return had been placed in "suspense" pending completion of the examination of the Demy Associates Form 1065 partnership return. Only on completion of the audit of the partnership return was it possible to determine the allowability of the $195,101 loss deduction claimed with respect to Demy Associates. The District Director's letter of November 14, 1980, to petitioners, plainly states: We are examining your Federal Income Tax return for the above years. The examination concerns one or more partnerships in which you have an interest. In petitioners' call to J.Casale, made on November 20, 1980, as requested in that letter, they informed J. Casale that they wished *62 to exercise their "appeal rights." This was less than 2 months before January 15, 1981, the date on which the Form 872-T was mailed and when petitioners now argue their return was not under examination. On December 9, 1980, Braverman mailed the power of attorney to J. Casale authorizing Braverman and an accountant to represent petitioners "with respect to 1976 tax matters." Although no final decision on the amount of petitioners' liability could be made until the examination of the Demy Associates partnership return had been completed, we think it apparent that the District Director's office was still considering petitioners' case--that his return was under examination--on January 15, 1981, when the Form 872-T was mailed. Petitioners next argue that the Form 872-T notice of the termination of the consent agreement sent to the Philadelphia Service Center, which services the district office in which petitioners' case was pending, was sufficient notice to the District Director's office. Petitioners argue that they should not be expected to know and appreciate the diverse functions of the Service Center and the District Director's office. Upon receipt of the termination notice, petitioners *63 argue, the Service Center personnel had an obligation to find the official who had custody of petitioners' return and associate the notice with the file. Because the Service Center personnel failed to do so, petitioners argue, the Form 872-A consent agreement was terminated on January 15, 1981, when they mailed the Form 872-T termination notice to the Service Center rather than to the District Director's office. We do not agree. We are here dealing with a waiver of the statute of limitations pursuant to an agreement by the parties as set forth in the Form 872-A, and an effort by petitioners, one of the parties to that agreement, to terminate the waiver agreement. The methods for terminating the waiver, [2] quoted in our findings, are carefully stated in the Form 872-A agreement. In the case of a termination by a taxpayer, the 90-day period for assessment begins when the "Internal Revenue Service office considering the case receives" the Form 872-T; in contrast, in the case of a termination by the Internal Revenue Service, the 90-day period begins when the Internal Revenue Service "mails" a Form 872-T or a notice of deficiency to the taxpayer. These are the terms of *64 the agreement to which petitioners consented; there is no evidence that they tried to negotiate any different ones. [3]
*65 The following statement appears on the face of the Form 872-T: "Signature and mailing instructions are on the back of this form." On the reverse side of the form, headed "Instructions," are 11 succinct paragraphs detailing the procedures to be followed in signing and mailing the form, including those quoted in our findings. None of the paragraphs instruct a taxpayer to mail the Form 872-T to a Service Center. Petitioners did not follow the instructions contained on the reverse side of the Form 872-T when they mailed it in January 1981; instead, they mailed the form to the Philadelphia Service Center. Given the specific language concerning methods for termination set forth in the Form 872-A itself and the fact that, as a result of petitioners' failure to follow the mailing instructions clearly set forth on the reverse side of the Form 872-T, the form was not received by the office considering their case, we think that petitioners' effort to terminate the agreement by mailing the Form 872-T to the Philadelphia Service Center on January 15, 1981, was not effective. We think it ispertinent that we are not here dealing with taxpayers who lack sophistication *66 in tax matters. Petitioners entered into that both parties have expressly or impliedly referred to as a tax shelter partnership, claiming a $195,101 loss deduction on their 1976 return. They have now agreed to the disallowance of a major portion of that deduction. Shortly after they were notified on November 14, 1980, that their return was being examined, they retained Braverman and he filed the power of attorney given by petitioners to him and an accountant. Braverman is an attorney who specializes in tax matters. He had handled Forms 872-A for other clients and was familiar with the procedures to be followed. Petitioners were acting on Braverman's advice when they decided to sign the Form 872-T and terminate the extension agreement. Had Braverman and petitioners exercised the same diligence in making certain that the Form 872-T was mailed to the Internal Revenue Service office considering petitioners' case as they now argue the Service Center personnel should have used in locating the petitioners' return and associating the Form 872-T with it, we are confident that the present case would not have arisen. We do not intend to suggest that the Service Center personnel who received *67 the Form 872-T did not have a responsibility for attempting to associate it with petitioners' 1976 return. In fact, Internal Revenue Service internal procedures are designed to aid in locating the return in cases in which the Form 872-T is sent to an office other than the one considering the case. Internal RevenueManual 4541.81(7). The record does not show why this association was not made or how the breakdown occurred in this case. [4] The Internal Revenue Service, however, apparently recognized that an imprecise address on a mailing of a termination notice by a taxpayer could lead to wuch a breakdown when it promulgated Form 872-A. To protect against the loss of revenue in the case of a delay in the receipt of a termination notice by the proper Internal Revenue Service officials, the Form 872-A triggers the beginning of the 90-day period for assessments, in the case of a termination by a taxpayer, on the receipt of a Form 872-T by the "Internal Revenue Service office considering the case." *68 Despite the Service Center's failure to associate petitioners' Form 872-T with his administrative file, we think it is reasonable to apply the Form 872-A agreement as written in this case. Both petitioners and Braverman had at least a degree of tax sophistication. Both had been informed and were aware of the Internal Revenue Service office as well as the name of the official (J. Casale) they were to contact regarding petitioners' case. One of the petitioners had actually talked with that official by telephone; Braverman addressed a letter to him when he sent in his power of attorney. If, when they mailed the Form 872-T, petitioners did not appreciate the difference between the Service Center and the District Director's office, as they now argue, Braverman certainly did, and petitioners were following his advice. If the termination of the Form 872-A agreement within 90 days after January 15, 1981, was important to them, Braverman should have prepared an envelope for mailing the Form 872-T or at least instructed petitioners where it was to be mailed. He did neither. Petitioners cite and discuss cases arising under the "last known address" provisions of section 6212(b)(1) *69 which hold that a taxpayer's notice of address change need not necessarily be made to the agent assigned to the return for the year. Welch v. Schweitzer,106 F.2d 885, 887 (9th Cir. 1939); Weinroth v. Commissioner,74 T.C. 430, 440 (1980). Such cases, however, focus on a taxpayer's duty to inform the Commissioner concerning changes of address and the Commissioner's duty to exercise due diligence in ascertaining a taxpayer's last known address for purposes of mailing a valid notice of deficiency under section 6212(b)(1). They are inapposite to the much narrower question here involved, i.e., whether, under the specific terms of the Form 872-A, petitioners properly sent the Form 872-T to "the Internal Revenue Service office considering the case." We hold that the Form 872-A agreement was not terminated by the January 15, 1981 mailing. In accordance with the stipulation of the parties as to the amount of the deficiency, Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, in the form in which the several provisions were effective for the years in issue, unless otherwise noted.↩
2. Prior to 1979, no particular form or letter existed for the purpose of terminating a Form 872-A agreement. Rev. Proc. 71-11, 1971-1 C.B. 678. In Johnson v. Commissioner,68 T.C. 637 (1977), and Borg-Warner Corp. v. Commissioner,660 F.2d 324 (7th Cir. 1981), revg. a Memorandum Opinion of this Court, certain letters were held to constitute "written notification" sufficient to terminate a Form 872-A agreement. In Rev. Proc. 79-22, 1979-1 C.B. 563↩, the Commissioner announced that Form 872-A agreements could be terminated only in the manner set forth in our findings; the Rev. Proc. states (at sec. 4.04) that "[s]teps taken to terminate Forms 872-A by the Service or the taxpayer(s) other than by using Forms 872-T (e.g., by letter or orally) will not terminate Form 872-A." Braverman was knowledgeable of these procedures.
3. Although sec. 6501(c)(4) provides that a waiver or consent must be in writing, the writing under the statute need not take any particular form if both the taxpayer and the Secretary agree on the terms of the waiver. "It is well settled that a consent to extend the statute of limitations for assessment and collection of an income tax is not a contract but a unilateral waiver of defense by a taxpayer," Tallal v. Commissioner,77 T.C. 1291, 1294 (1981); Piarulle v. Commissioner,80 T.C. 1035, 1042 (1983). Nonetheless, "[c]ontract principles are significant, * * * because section 6501(c)(4) requires that the parties reach a written agreement as to the extension." Piarulle v. Commissioner,supra at 1042. As stated in Pursell v. Commissioner,38 T.C. 263, 278 (1962), affd. per curiam 315 F.2d 629↩ (3d Cir. 1963), sec. 6501(c)(4) "leaves the parties free to decide for themselves the terms on which an extension will be granted."
4. According to the testimony, the Service Center computer system in place at the time of the trial would likely identify the office having custody of a taxpayer's return under examination; as of Jan. 15, 1981, however, that was not necessarily so with respect to the $3,500 to 4,000 returns involving tax shelters then under examination in the Philadelphia District Director's office.↩